No. 25-2682

# In The United States Court Of Appeals For The Seventh Circuit

---

AARON FILLMORE,

        *Plaintiff-Appellant,*

v.

MELISSA WISE, et al.,

        *Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS

---

THERE HEARD AS CASE NO. 22-cv-02705-GCS

---

HONORABLE GILBERT C. SISON,
JUDGE PRESIDING

---

**RESPONSE BRIEF OF DEFENDANTS-APPELLEES MELISSA WISE, NP AND PERCY MYERS, M.D.**

---

Julie A. Teuscher
Patrick M. Creagh
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 (Fax)
jteuscher@cassiday.com
pcreagh@cassiday.com

*Attorneys for Defendants-Appellees*

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>25-2682</u>

Short Caption: <u>Aaron Fillmore v. Melissa Wise, et al</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

     ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Defendants-Appellees, Melissa Wise, NP,   and Dr. Percy Myers</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Cassiday Schade LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

          <u>None.</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          <u>None.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N.A.</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N.A.</u>

Attorney's Signature: <u>/s/Julie A. Teuscher</u>    Date: <u>September 25, 2025</u>

Attorney's Printed Name:  <u>Julie A. Teuscher</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑ **No** ☐

Address: <u>222 W. Adams Street, Suite 2900</u>

    <u>Chicago, IL  60606</u>

Phone Number: <u>(312) 444-2478</u>    Fax Number:  <u>(312) 444-1669</u>

E-Mail Address: <u>jteuscher@cassiday.com</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As          Clear Form

Appellate Court No: <u>25-2682</u>

Short Caption: <u>Aaron Fillmore v. Melissa Wise, et al</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Defendants-Appellees Melissa Wise, NP, and Dr. Percy Myers</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Cassiday Schade LLP</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

        <u>None.</u>

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>None.</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>N.A.</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>N.A.</u>

Attorney's Signature: <u>/s/Patrick M. Creagh</u>      Date: <u>July 22, 2026</u>

Attorney's Printed Name: <u>Patrick M. Creagh</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [✔]  **No** [ ]

Address: <u>222 W. Adams Street, Suite 2900</u>

       <u>Chicago, IL 60606</u>

Phone Number: <u>(312) 444-2495</u>      Fax Number: <u>(312) 444-1669</u>

E-Mail Address: <u>pcreagh@cassiday.com</u>

rev. 12/19 AK

# TABLE OF CONTENTS

**Page(s)**

JURISDICTIONAL STATEMENT ............................................................ 1

ISSUES PRESENTED FOR REVIEW ..................................................... 2

STATEMENT OF CASE ........................................................................ 3

    **Parties** ............................................................................... 3

    **Security Measures in Administrative Detention** ........................... 3

    **Fillmore's Medical Treatment Before the Occurrence Period** ....... 4

    **Fillmore's Pertinent Medical Treatment after Transfer to Lawrence** ............................................................................. 6

    **District Court Proceedings** ..................................................... 12

        *Fillmore's Complaint* ....................................................... 12

        *Fillmore Moves for Summary Judgment* ............................... 13

        *Dr. Myers and NP Wise Move for Summary Judgment* ............. 14

        *District Court Rules on Motions for Summary Judgment* ........... 16

        *Fillmore Moves to Alter/Amend the Judgment* ....................... 18

SUMMARY OF ARGUMENT ................................................................ 20

ARGUMENT ...................................................................................... 22

  I.  **Fillmore has Forfeited any Challenge to the Summary Judgment Ruling in Favor of NP Wise and Dr. Myers on his Deliberate Indifference Claims by Failing to Challenge those Rulings in his Opening Appellant's Brief** ................................. 22

  II. **If Preserved, this Court Should Affirm Summary Judgment in Favor of NP Wise and Dr. Myers on Fillmore's Deliberate Indifference Claims** .............................................................. 24

A.     **Standard of Review** ............................................................. 24

B.     **The Deliberate Indifference Standard** ................................ 24

C.     **Neither NP Wise nor Dr. Myers Were Deliberately Indifferent to Fillmore's Prescribed Medications or to His Request for Medical Permits** ...................................... 25

      *1.*     *NP Wise exercised her professional judgment in responding to Fillmore's complaints* ................................................. 25

      *2.*     *Dr. Myers exercised his professional judgment in responding to Fillmore's complaints* ................................................. 28

**III.**    **Fillmore has not Challenged the District Court's Order Granting Summary Judgment to NP Wise on Fillmore's First Amendment Retaliation Claim** ....................................... 30

**CONCLUSION** ..................................................................... 31

**CERTIFICATE OF COMPLIANCE** ........................................... 32

**CERTIFICATE OF SERVICE** .................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

*Arce v. Wexford Health Sources, Inc.,*
   75 F.4th 673 (7th Cir. 2023) ....................................................... 28

*Burton v. Downey,*
   805 F.3d 776 (7th Cir. 2015) ...................................................... 25

*Christensen v. Weiss,*
   145 F.4th 743 (7th Cir. 2025) ...................................................... 24

*Dunigan by Nyman v. Winnebago Cty.,*
   165 F.3d 587 (7th Cir. 1999) ...................................................... 24

*Estelle v. Gamble,*
   429 US 97 (1976) ...................................................................... 24

*Forbes v. Edgar,*
   112 F.3d 262 (7th Cir. 1997) ...................................................... 25

*Gills v. Hamilton,*
   164 F.4th 640 (7th Cir. 2026) ..................................................... 24

*Hildreth v. Butler,*
   960 F.3d 420 (7th Cir. 2020) ...................................................... 25

*Johnson v. Dominguez,*
   5 F.4th 818 (7th Cir. 2021) ........................................................ 25

*Johnson v. Rimmer,*
   936 F.3d 695 (7th Cir. 2019) ...................................................... 25

*J.S. Sweet Co. v. Sika Chem. Corp.,*
   400 F.3d 1028 (7th Cir. 2005) ..................................................... 30

*Olson v. Randstad HR Sols. Of Del. LLC,*
   2025 U.S. App. LEXIS 2617 ....................................................... 23

*Scheidler v. Indiana,*
   914 F.3d 535 (7th Cir. 2019) ...................................................... 22

*Springer v. Durflinger,*
   518 F.3d 479 (7th Cir. 2008) ...................................................... 24

iii

*Stewart v. Wexford Health Sources, Inc.,*
    14 F.4th 757 (7th Cir. 2021) ………………………………………………………29-30

*United States v. Berkowitz,*
    927 F.2d 1376 (7th Cir. 1991) ……………………………………………… 22

*Whitaker v. Dempsey,*
    144 F.4th 908 (7th Cir. 2025) ……………………………………………… 24

*White v. United States,*
    8 F.4th 547 (7th Cir. 2021) ………………………………………………… 23

## STATUTES

Americans with Disabilities Act of 1990,
    42 U.S.C. §§ 12101–12213. ………………………………….. 12-14, 20, 22-23

Rehabilitation Act of 1973,
    29 U.S.C. §§ 701–796………………………………………….. 12-14, 23

## RULES

Fed. R. Civ. P. 28(b) …………………………………………………………… 1

## OTHER AUTHORITIES

Admin. Directive, IDOC No. 05.21.101 ……………………………………….. 3

**JURISDICTIONAL STATEMENT**

Pursuant to Circuit Rule 28(b), Defendants-Appellees NP Melissa Wise and Dr. Percy Meyers state Plaintiff-Appellant Aaron Fillmore's Amended Jurisdictional Statement (Doc. 28) is complete and correct.

1

## ISSUES PRESENTED FOR REVIEW

1. Whether Fillmore has forfeited any challenge to the district court's order granting summary judgment to NP Wise and Dr. Myers on Fillmore's deliberate indifference claims by failing to raise such an argument in his opening appellant's brief.

2. If preserved, whether the district court correctly granted summary judgment to NP Wise and Dr. Myers on Fillmore's claims of deliberate indifference after finding Wise and Myers exercised their professional judgment in adjusting Fillmore's medications and denying his requests for a waist chain permit.

3. Whether Fillmore has forfeited any challenge to the district court's order granting summary judgment to NP Wise on Fillmore's First Amendment retaliation claim by failing to raise such an argument in his opening appellant's brief.

## STATEMENT OF CASE

**Parties**

Aaron Fillmore was incarcerated at Lawrence Correctional Center ("Lawrence") in maximum security in the Administrative Detention Unit at all times relevant to the Complaint. (Doc. 1, pp. 2, 4, ¶ 22; Doc. 108-3, p. 76) Fillmore has no medical training. (Doc. 108-3, p. 24)

Dr. Percy Myers is a physician employed by Wexford Health Sources, Inc. as the Medical Director at Pinckneyville Correctional Center who also serves as a Traveling Medical Director providing care to patients at Lawrence when needed. (Doc. 108-1, p. 1, ¶ 3)

NP Melissa Wise has a Master of Science Nursing Family Nurse Practitioner degree and has been licensed as a nurse practitioner in Illinois since 2019. (Doc. 108-2, p. 1, ¶ 2) Wise is also employed by Wexford and has been a nurse practitioner at Lawrence since February of 2022. (Doc. 108-2, p. 1, ¶ 3)

**Security Measures in Administrative Detention**

The Administrative Detention Unit housed "those individuals in custody who pose the greatest threat to the safety and security of the correctional facility and cannot be managed safely in general population." (Admin. Directive, IDOC, No. 05.21.101, Doc. 125-4, p. 1) IDOC Administrative Directive No. 05.12.101 describes security measures for inmates housed in Administrative Detention: prior to moving an individual housed in the Administrative Detention Unit outside of his assigned living unit cell, "proper security restraints shall consist of, at a minimum, wrist

3

restraints applied behind the individual in custody's back with a security lead at-tached and leg restraints, unless medically contraindicated …" (Doc. 1, p. 33) As to inmate movement, the Directive also stated the "offender shall be handcuffed behind the back in his or her cell, unless a medical condition or other reason exists to require front cuffing, as approved by the Major or above…" (Doc. 1, p. 34) Inmates in Admin-istrative Detention are not cuffed when in their cells. (Doc. 108-3, p. 28)

A front cuff permit indicates an inmate is handcuffed by security staff with his hands in front rather than behind his back. (Doc. 108-1, p. 2, ¶ 5) A waist chain permit consists of a chain around the waist of an incarcerated individual where his hands are handcuffed to the waist chain at his side. (Id.) Fillmore testified that each time he was taken to see a nurse in the health care unit, he was placed in waist chains and that "[n]obody is cuffed behind the back to see a nurse. They are always waist chains, no matter if they have a permit or not." (Doc. 108-3, p. 77)

**Fillmore's Medical Treatment Before the Occurrence Period**

Fillmore suffered a compound fracture of his left wrist in 1982 for which he underwent surgery. (Doc. 108-5, pp. 1, 4) As a result, Fillmore's left arm was three inches shorter than his right arm with decreased range of motion. (Doc. 108-5, pp. 6,9) Fillmore was incarcerated in 1994 for his current sentence. (Doc. 108-3, p. 10)

In January of 2018, a non-party physician ordered a front cuff permit for Fill-more for 6 months. (Doc. 108-9, pp. 51, 54) In December of 2018, Fillmore was seen at nurse sick call at Lawrence where his permit for no cuffing behind the back was

4

renewed for one year by a non-party Nurse Practitioner ("NP"). (Doc. 108-5, pp. 25-26; Doc. 108-9, p. 57)

In September of 2019, a non-party NP discontinued the no cuffing behind the back permit, finding the fact one arm was shorter than the other "should not matter." (Doc. 108-5, p. 30; Doc. 108-9, p. 58) In October of 2019, Fillmore told a non-party LPN he did not understand why his permit had not been renewed, stating "I need the waist chains." (Doc. 108-5, p. 31) The LPN referred Fillmore to a physician or NP to evaluate Fillmore's need for waist chains or to educate Fillmore why there was no need for a waist chain. (Id.) A non-party NP evaluated Fillmore for his need for a waist chain on November 6, 2019, noted x-rays demonstrated chronic wrist/arm disability, and provided a permit for 12 months. (Doc. 108-5, p. 34; Doc. 108-9, p. 62) Non-party Dr. Tilden authorized a security belt permit for six months in January of 2020. (Doc. 108-5, p. 9)

Fillmore was transferred to Pontiac Correctional Center on January 27, 2020 where it was noted he had a waist chain permit. (Doc. 108-5, p. 36) A non-party physician at Pontiac authorized alternative cuffing for 6 months. (Doc. 108-9, p. 64) In July of 2020, Fillmore requested renewal of his waist chain permit. (Doc. 108-5, p. 40) A non-party NP noted in August of 2020 that Fillmore had full range of motion in his left wrist and ordered an x-ray of the wrist. (Id.) Non-party Dr. Tilden ordered alternative cuffing on August 18, 2020 for 6 months, until February 18, 2021. (Doc. 108-9, p. 69)

5

In February of 2021, Fillmore's waist chain permit was renewed for one year by a non-party NP at Pontiac. (Doc. 108-5, p. 44; Doc. 108-9, p. 71) The permit was renewed again for 6 months in February of 2022, or until August of 2022. (Doc. 108-5, p. 48; Doc. 108-9, p. 72)

**Fillmore's Pertinent Medical Treatment after Transfer to Lawrence**

Fillmore returned to Lawrence on March 1, 2022. (Doc. 108-5, p. 51) Fillmore had an existing waist chain permit upon his transfer. (Doc. 108-3, pp. 27-28) An order was issued continuing Fillmore's waist chain permit from Pontiac until August 15, 2022. (Doc. 108-10, p. 11) While the record indicates Dr. Myers authorized continuation of this permit, the permit was not in Dr. Myers' handwriting and Myers does not recall being contacted by a nurse on March 1, 2022 regarding this permit. (Doc. 108-1, p. 2, ¶ 8) However, Dr. Myers stated that if he was the doctor on call at the time of Fillmore's transfer to Lawrence, the intake nurse would have reviewed Fillmore's chart and observed that Fillmore had a permit for a waist chain issued on February 15, 2022 at Pontiac, and would have called Dr. Myers to "bridge" the permit until Fillmore could be evaluated. (Doc. 108-1, pp. 2-3, ¶ 8)

A non-party NP evaluated Fillmore on March 25, 2022 for Fillmore's request for continuation of his waist chain permit. (Doc. 108-5, p. 61) Since Fillmore's current permit was active through August of 2022, the NP found no need to renew the permit at that time. (Id.) Fillmore explained he had the permit because he had had multiple surgeries on his left wrist and because his left arm was shorter than his right arm.

6

(Id.) Fillmore said this caused him to experience pins/needles when cuffed in the back. (Id.) The NP ordered an x-ray of Fillmore's left wrist. (Id.)

On April 11, 2022, Fillmore was seen by a non-party LPN and complained of pain in his left wrist, hand, and fingers at a level of 5-8 for the previous few months. (Doc. 108-6, p. 2) The LPN ordered Ibuprofen and noted an x-ray had been ordered. (Id.) The April 28, 2022 x-ray of Fillmore's left wrist revealed no fractures or dislocations, just chronic degenerative changes (arthritis). (Doc. 103-7, p. 43; Doc. 108-2, p. 3, ¶ 10)

On May 20, 2022, NP Wise saw Fillmore for the first time for follow up after his wrist x-ray. (Doc. 108-6, p. 12; Doc. 108-2, p. 3, ¶ 11) Wise noted Fillmore was restrained during this visit. (Doc. 108-6, p. 12) Fillmore said he woke up with numbness and decreased range of motion. (Id.) Wise noted obvious shortening of Fillmore's left arm and that his x-ray showed chronic arthritis. (Id.; Doc. 108-2, p. 3, ¶ 11) Wise attested that Fillmore did not complain of shoulder pain since she would have recorded such a complaint and there is no such note in her charting. (Doc. 108-2, p. 3, ¶ 12) Wise noted "[n]o obvious reason for waist chain permit is seen at this time. Will do EMG to evaluate for the numbness of the left arm." (Doc. 108-6, p. 12) In Wise's medical opinion, there was no reason for a waist chain permit at that time. (Doc. 108-2, p. 3, ¶ 11) However, Fillmore still had his waist chain permit until August of 2022 and NP Wise did not cancel the permit. (Doc. 108-3, p. 38)

Although Fillmore's left arm was shorter than his right arm, he did not qualify for a waist chain permit since he did not meet the criteria. (Doc. 108-2, p. 3, ¶ 11)

7

Wise ordered an EMG which measures muscle response or electrical activity in response to a nerve's stimulation of the muscle and the EMG was approved on June 1, 2022. (Doc. 103-1, p. 3, ¶ 11; Doc., 108-2, p. 3, ¶¶ 11, 13; Doc. 108-6, pp. 14, 44-45) The EMG was scheduled for December 20, 2022 at Crawford Memorial Hospital. (Doc. 108-6, pp. 19, 46)

Fillmore believes he wrote to NP Wise on June 1, 2022 regarding medical treatment for his wrist, but he does not know if Wise received his note. (Doc. 108-3, p. 39) On June 10, 2022, NP Wise conducted a chart review for Fillmore's reports of pain in his arm but did not see Fillmore. (Doc. 108-6, p.16; Doc. 108-2, p. 3, ¶ 14) Wise prescribed Mobic, a non-steroidal anti-inflammatory medication, for 6 months. (Id.; Doc. 108-8, pp. 5, 25; Doc. 108-1, p. 3, ¶ 13) Mobic is helpful in treating patients with arthritis because it reduces inflammation. (Doc. 108-2, p.3, ¶ 14)

Fillmore testified he sent a note on June 30, 2022 to NP Wise in healthcare, stating his medications were not working. (Doc. 108-3, pp. 42, 43) Fillmore does not know if NP Wise ever saw the note since he does not know who receives medication sick call forms. (Doc. 103-8, p. 43) Fillmore also said he sent NP Wise notes on July 10 and on July 13, 2022 for permit renewal. (Doc. 108-3, pp. 43-44) Fillmore did not know if Wise received those notes either. (Doc. 108-3, p. 45)

On July 25, 2022, NP Wise conducted another chart review for medication and permit renewal. (Doc. 108-6, p. 21) Wise noted Mobic had been renewed on June 10, 2022 and that her chart review showed no acute abnormalities and "only degenerative changes on x-ray." (Id.) Wise noted "[a]t this time he does not qualify for waist

8

chain permit." (Id.; Doc. 108-10, p. 4) In Wise's opinion, Fillmore's arm length discrepancy did not qualify him for a waist chain permit, nor was the permit medically necessary. (Doc. 108-2, p. 5, ¶ 19) In Wise's opinion, Fillmore's condition did not warrant a recommendation to security staff to alter cuffing procedures for Fillmore. (Doc. 108-2, p. 5, ¶ 20)

On August 11, 2022, Fillmore complained to a non-party LPN of left wrist pain and numbness, and numbness to his left hand and fingers. (Doc. 108-6, p. 24) Fillmore said the Mobic was not helping and requested a waist chain permit. (Id.) The LPN referred Fillmore to a physician who gave Fillmore 3 days of Acetaminophen. (Id.)

Dr. Myers examined Fillmore on August 20, 2022 and noted Fillmore reported his left arm and hand would occasionally "go numb." (Doc. 108-1, p. 4, ¶ 17; Doc. 108-6, p. 26) Fillmore also complained of pain in the arm, but said Tylenol helped to decrease his pain in the past. (Id.) Fillmore asked for a waist chain permit. (Id.) Fillmore did not complain of shoulder pain, since Dr. Myers would have recorded such a complaint and there is no such reference in the contemporaneous record. (Doc. 108-1, p. 5, ¶ 20) Dr. Myers observed good blood flow to Fillmore's wrist and good motor control. (Doc. 108-1, p. 4, ¶ 17) Dr. Myers discussed Tylenol (Acetaminophen) use with Fillmore, ordered additional Acetaminophen for 6 months, noted the x-ray of April 2022 had revealed chronic and degenerative changes (arthritis), and planned to wait for the results of the scheduled EMG. (Doc. 108-1, p. 4, ¶ 17; Doc. 108-6, p. 26; Doc. 108-8, pp. 9, 25)

9

Dr. Myers did not order a waist chain permit for Fillmore on August 20, 2022. (Doc. 108-1, p. 4, ¶ 17) Dr. Myers attested that IDOC had a policy at Lawrence posted in the examination rooms stating the criteria for waist chain or other alternate cuffing permits. (Id.) If a patient who requested a waist chain permit did not qualify for one based on the IDOC's criteria, it was Dr. Myers' custom and practice to show the patient the posted policy and explain why the patient did not qualify. (Id.) Fillmore agreed that Dr. Myers pointed to a policy "on the wall" indicating IDOC and "him" would not provide further waist chain or front cuff medical permits. (Doc. 108-3, p. 26) Fillmore read the IDOC policy during this visit which, according to Fillmore, stated front cuffing and waist chains would not be provided for "max" individuals no matter the disability. (Doc. 108-3, pp. 89-90)

Dr. Myers could not override security policies. (Doc., 108-1, p. 4, ¶18) Security overrode all medical decisions related to cuffing incarcerated individuals. (Id.) And in any event, in Dr. Myers' medical opinion, Fillmore's condition did not warrant a recommendation to security staff to alter the cuffing procedures for Fillmore. (Doc. 108-1, pp. 4-5, ¶ 18) In Dr. Myers' medical opinion, a medical permit was not medically necessary for Fillmore and Fillmore did not meet the criteria for a waist chain permit on August 20, 2022. (Doc. 108-1, p. 5, ¶ 19)

On November 3, 2022 a non-party RN noted she called Dr. Myers for clarification on charting from August 20, 2022 regarding a waist chain permit. (Doc. 108-6, p.32) The RN noted "Dr. Myers states that he did not write for a waist chain permit since it was not charted in the plan section." (Id.)

On November 27 and December 4, 2022, Fillmore submitted requests to the Health Care Unit complaining of sciatic nerve pain and numbness in his left leg. (Doc. 108-6, pp. 31, 33) Fillmore said nothing about his left arm or wrist, or his desire for a waist chain permit. (Id.) On December 12, 2022, Fillmore was seen by an LPN for complaints of low back pain for 2 months. (Doc. 108-6, p. 34) Fillmore reported numbness in his left buttock and left leg but said nothing about his left arm or wrist. (Id.)

Fillmore's EMG on December 20, 2022 revealed mild, bilateral carpal tunnel syndrome, greater on the left than the right. (Doc. 108-6, pp. 47-48)

On December 23, 2022, a non-party NP saw Fillmore and noted testing revealed mild bilateral carpal tunnel syndrome. (Doc. 108-6, p. 41) Fillmore requested wrist braces for treatment, but was told that per the regional medical director, no braces were to be issued. (Id.) The NP referred Fillmore to a physician for further evaluation and discussion, to which Fillmore was agreeable. (Id.) The NP prescribed Tylenol and Diclofenac (an anti-inflammatory medicine used to treat arthritis) for 12 months, and Fillmore was placed on Dr. Myers' call line for his persistent requests for a waist chain permit and for his request for braces for carpal tunnel. (Id.; Doc. 108-8, p. 24; Doc. 108-1, p. 5, ¶ 23)

Fillmore testified that he was never placed in cuffs behind his back after he first received his permit in 2018. (Doc. 108-3, p. 116) Specifically, between August of 2022 and his transfer to New Mexico in January of 2023, Fillmore was never cuffed behind his back. (Doc. 108-3, p. 116)

11

Fillmore was transferred from Lawrence to New Mexico on January 24, 2023 at which time he was no longer under Dr. Myers' or NP Wise's care. (Doc. 108-1, pp. 5-6, ¶ 24; Doc. 108-2, p. 6, ¶ 24; Doc. 108-3, p. 78) On January 24, 2023, an unidentified individual at the New Mexico Corrections Department noted Fillmore should not be cuffed in the back due to a left arm injury. (Doc. 100, p. 15) On February 2, 2023, the New Mexico Corrections Department records indicate NP Reyes ordered a front cuff permit for Fillmore due to shoulder problems. (Doc. 100, p. 16) The New Mexico medical permits indicate Fillmore was given alternative cuffing permits for a left arm injury on January 24, 2023 and for a shoulder injury on February 2, 2023. (Doc. 108-3, pp. 101-02)

**District Court Proceedings**

*Fillmore's Complaint*

Aaron Fillmore filed a pro se complaint against defendants Rob Jeffreys, NP Melissa Wise, L. Cunningham, and Dr. Percy Myers for deliberate indifference, retaliation, and violation of his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). (Doc. 1) Fillmore alleged that since 2003, he had been held in the Administrative Detention Unit, requiring the use of handcuffs, chains, and leg shackles whenever he was allowed to leave his cell. (Doc. 1, p. 4, ¶ 22) Fillmore alleged that, beginning in 2018, IDOC officials required a medical permit for alternative cuffing. (Doc. 1, p. 5, ¶ 25) Fillmore alleged that defendant NP Wise was deliberately indifferent to his wrist and arm pain and that Wise retaliated against Fillmore due to grievances Fillmore filed against Wise. (Doc. 1, p. 8, ¶¶ 47-

12

48) Fillmore alleged Dr. Percy Myers was deliberately indifferent to his arm and wrist pain and failed to renew a medical permit for alternative cuffing. (Doc. 1, p. 11, ¶ 65-66)

The district court screened Fillmore's complaint and permitted Fillmore to pursue the following four claims: (1) Violation of the ADA by defendant Jeffreys; (2) Violation of the RA by Jeffreys; (3) Violation of the 8th Amendment by defendants Wise, Myers, and Cunningham for failing to adjust Fillmore's pain medications from May to August of 2022 and for failing to renew Fillmore's medical cuff permit; and (4) Violation of the First Amendment by Wise for retaliating against Fillmore by denying his medical permits after he filed grievances about Wise's care. (Doc. 7, pp. 3-4) Any other claims mentioned in Fillmore's complaint were considered "dismissed without prejudice as inadequately pled …" (Doc. 7, p. 4) The court dismissed Cunningham as a defendant. (Doc. 7, p. 6) Later, Latoya Hughes was substituted for Rob Jeffrey in her official capacity as Acting Director of the Department of Corrections. (Doc. 82, fn 1)

*Fillmore Moves for Summary Judgment*

On June 10, 2024, Fillmore moved for summary judgment against Jeffreys, Wise, and Myers. (Doc. 100) Fillmore argued the defendants were "personally aware of his physical disability and were deliberately indifferent and failed to accommodate him." (Doc. 100, p. 7) Fillmore argued the failure to renew or grant a medical permit can support a finding of deliberate indifference. (Doc. 100, p. 7) Fillmore also argued

13

NP Wise retaliated against him in violation of the First Amendment.  (Doc. 100, p. 10)

NP Melissa Wise and Dr. Percy Myers responded to Fillmore's motion for summary judgment.  (Doc. 103) Both argued Fillmore's claims under the ADA and the RA were stated only against co-defendant Jeffreys under the Court's merit review order.  (Doc. 103, p. 8) Both argued Fillmore's condition did not warrant a recommendation to security staff to alter normal cuffing procedures and that a waist chain permit was not medically necessary.  (Doc. 103, p. 9) As to Fillmore's retaliation claim, NP Wise argued that Fillmore acknowledged he did not know if NP Wise saw the grievance stated against her and he could not remember if Wise ever spoke with him about the grievances.  (Doc. 103, p. 12) Likewise, NP Wise testified she had no recollection of seeing any grievances and that even if she had been informed of a grievance, her decisions not to continue Fillmore's waist chain permits were not influenced or motivated by Fillmore's filing of a grievance.  (Doc. 103, p.12) In Wise's opinion, Fillmore did not qualify for a waist chain permit nor was it medically necessary.  (Id.)  NP Wise also argued that Fillmore continued to file grievances against her after Wise allegedly retaliated against him – indicating his alleged behavior was not silenced.  (Doc. 103, pp. 12-13) Dr. Myers and NP Wise urged the district court to deny Fillmore's request for summary judgment.  (Doc. 103, p. 13)

*Dr. Myers and NP Wise Move for Summary Judgment*

Meanwhile, Dr. Myers and NP Wise moved for summary judgment.  (Docs. 107, 108) Dr. Myers argued that he adjusted Fillmore's pain medication by prescribing

Tylenol in addition to the Mobic Fillmore was taking. (Doc. 108, p.14) Dr. Myers further argued that Fillmore's complaints of wrist pain on August 20, 2022 did not warrant a waist chain permit. (Doc. 108, p. 14) Dr. Myers testified that Fillmore did not qualify for a waist chain permit pursuant to IDOC policy at Lawrence and that such a permit was not medically necessary. (Id.) Dr. Myers argued that Fillmore was not entitled to demand specific care. (Doc. 108, pp. 14-15)

NP Wise argued that a waist chain permit was not medically indicated for Fillmore. (Doc. 108, pp. 15-16) The record contained no indication Fillmore complained of shoulder pain when evaluated by NP Wise on May 20, 2022. (Doc. 108, p.16) NP Wise believed Fillmore did not qualify for a waist chain permit and testified that such a permit was not medically necessary in his case. (Doc. 108, p. 17)

As to Fillmore's retaliation claim against NP Wise, Wise noted Fillmore had no proof NP Wise ever saw his grievance. (Doc. 108, p. 18) Wise did not recall being contacted by the grievance office about Fillmore's July 18, 2022 grievance or any other grievance. (Id.) And even if Wise had been informed of the grievance, Wise's decision not to continue Fillmore's waist chain permit was not influenced or motivated by Fillmore's grievance. (Id.) In her medical opinion, Fillmore did not qualify for a waist chain permit nor was it medically necessary. (Doc. 108, pp. 18-19) Finally, Wise observed that Fillmore continued to file grievances after he alleged NP Wise retaliated against him for grievances – establishing the alleged behavior did not silence Fillmore. (Doc. 108, p. 19) Dr. Meyers and NP Wise requested summary judgment in their favor. (Doc. 108, p. 19)

15

Fillmore responded, arguing he had a "known permanent physical disability, … mandating accommodation alternative cuffing to attend the prison programs …" (Doc. 113, p. 1) Fillmore did not identify the "permanent physical disability" about which he wrote. (Id.)  Fillmore claimed to suffer severe discomfort when cuffed behind his back.  (Doc. 113, p. 4) Fillmore enumerated the activities he was not permitted to attend because of his inability to be cuffed.  (Doc. 113, pp. 5-6) Fillmore argued Wise and Myers were deliberately indifferent for refusing to renew his medical permit for a waist chain.  (Doc. 113, p. 7)

As to the retaliation claim, Fillmore argued it "does not matter that plaintiff was not silenced or filed this lawsuit." (Doc. 113, p. 9) Fillmore then summarily stated that Wise "knew of the grievances filed against her … and retaliated against the plaintiff." (Doc. 113, p. 9)

On September 20, 2024, Latoya Hughes also moved for summary judgment. (Doc. 125)

*District Court Rules on Motions for Summary Judgment*

On March 28, 2025, the magistrate judge denied Fillmore's motion for summary judgment and granted the defendants Myers' and Wise's motion for summary judgment.  (Doc. 129) As to the deliberate indifference claim against Myers and Wise in Count III of Fillmore's complaint, the magistrate judge found no evidence Myers and Wise were deliberately indifferent to Fillmore's serious medical conditions.  (Doc. 129, p. 13) This was true even if the court accepted the plaintiff's left arm and bilateral carpal tunnel injuries were objectively serious medical conditions.  (Id.)

16

Based on the record, the judge concluded it "cannot be said that defendant Myers acted with deliberate indifference … when he renewed the medical cuff permit on or around March 1, 2022, and then denied the renewal of the medical cuff permit on August 20, 2022." (Doc. 129, p. 14) Dr. Myers reviewed Fillmore's medical records including x-rays of his left arm and hand and determined the cuff permit was not medically necessary. (Doc. 129, p. 14) Likewise, NP Wise did not act with deliberate indifference when she denied the medical cuff permit on May 20, 2022 after reviewing Fillmore's medical records including the April 28, 2022 x-ray of Fillmore's left arm and hand. (Doc. 129, p. 14) The judge noted that when Wise denied Fillmore's medical cuff permit renewal on July 25, 2022, she did so "only after reviewing the medical records again finding that the renewal was not medically necessary." (Id.) The magistrate judge determined that both Myers and Wise provided appropriate medical treatment to Fillmore. (Doc. 129, p. 15)

As to Fillmore's claim that NP Wise denied him pain medications, the judge observed that the Eighth Amendment did not require prison doctors to keep inmates pain free in the aftermath of proper medical treatment. (Doc. 129, p. 15) The court documented Wise's involvement with Fillmore in May, June, and July of 2022 and determined Wise provided appropriate treatment to Fillmore. (Doc. 129, pp. 15-16) The magistrate judge believed Myers and Wise provided Fillmore with adequate care and that the treatment was simply not the treatment Fillmore demanded. (Doc. 129, p. 16)

17

As to Fillmore's retaliation claim, the court noted Fillmore admitted he did not know if Wise saw his grievance dated July 18, 2022 and could not remember if Wise ever spoke to him about the grievance. (Doc. 129, p. 18) Likewise, Fillmore admitted he did not know if Wise saw his July 25, 2022 grievance. (Id.) The judge found Fillmore's retaliation claim failed as a matter of law on the second element – the need to establish a deprivation that would deter future protected conduct. (Doc. 129, p. 18) As Fillmore admitted, he continued to file grievances and filed this lawsuit before he was transferred to New Mexico. (Doc. 129, p. 19) The lack of a deterrent deprivation "dooms a retaliation claim." (Id.) Fillmore continued to receive medical care after filing his grievances and the record was devoid of any inference Wise denied Fillmore a medical cuff permit in retaliation for Fillmore's grievances against her. (Id.) The court also granted summary judgment in favor of LaToya Hughes. (Doc. 129)

*Fillmore Moves to Alter/Amend the Judgment*

Fillmore moved to alter or amend the judgment. (Doc. 135) Fillmore argued that he had established disputed material facts on his ADA/RA and deliberate indifference claims against Myers and Wise, though Fillmore had not filed ADA or RA claims against those defendants. (Doc 135, p. 2) Fillmore argued he was denied programs outside of his cell because of the defendants' refusal to renew his medical permit. (Doc. 135, p. 3) Fillmore said nothing about his retaliation claim against Wise. (Doc. 135) Instead, Fillmore asked the court to alter or amend its summary judgment order on his ADA/RA and deliberate indifference claims in Counts I through III. (Doc. 135, p. 4)

Dr. Myers and NP Wise responded to Fillmore's motion to alter or amend. (Doc. 136) Wise and Myers indicated that Fillmore brought forth no new evidence in his motion to alter or amend and instead tried to raise a new argument that it was physically impossible for him to be cuffed behind his back. (Doc. 136) The magistrate judge denied Fillmore's motion to alter or amend. (Doc. 146) The court found no manifest error of law or fact and noted Fillmore had never previously asserted that it was physically impossible for him to be cuffed behind his back. (Doc. 146, p. 3) Fillmore appealed. (Doc. 147)

## SUMMARY OF ARGUMENT

Summary judgment in favor of NP Wise and Dr. Myers should be affirmed.

Fillmore brought claims against NP Wise and Dr. Myers for deliberate indifference to his medical needs and brought a second claim against NP Wise for retaliation under the First Amendment. Fillmore did not bring a claim against either NP Wise or Dr. Myers under the ADA or the RA.

In his opening appellant's brief, Fillmore has not challenged the district court's grant of summary judgment to Wise and Myers on his deliberate indifference claims. Nor has Fillmore challenged the summary judgment ruling in favor of Wise on Fillmore's retaliation claim. Instead, Fillmore only challenges the court's grant of summary judgment on Fillmore's ADA and RA claims against the State Defendant. Accordingly, Fillmore has forfeited any challenge to the court's grant of summary judgment to Wise and Myers on his deliberate indifference and retaliation claims and this Court should affirm judgment in their favor.

Even if Fillmore preserved a challenge to the deliberate indifference ruling, Fillmore failed to prove Wise or Myers recklessly disregarded his medical condition. When Wise saw Fillmore in March of 2022, Wise ordered an EMG to evaluate Fillmore's reports of numbness in his left arm and despite finding no medical reason for a waist chain permit, Wise did not cancel Fillmore's waist chain permit authorized at Pontiac through August of 2022.

And when Wise performed chart reviews on Fillmore in June and July of 2022, Wise prescribed an anti-inflammatory medication for Fillmore's arthritic pain. In Wise's medical opinion, Fillmore's condition did not warrant an alternative cuffing

20

permit, nor did his condition meet IDOC criteria for such a permit. However, Wise did not cancel the waist chain permit in place until August of 2022.

Likewise, when Dr. Myers saw Fillmore in August of 2022, Myers prescribed Tylenol for Fillmore's arm discomfort since Fillmore said Tylenol had worked in the past. Dr. Myers did not order a waist chain permit because Fillmore did not qualify for the permit under the IDOC's criteria and because Myers was of the opinion a waist chain was not medically indicated.

Fillmore said nothing in his opening appellant's brief about his First Amendment retaliation claim against NP Wise or the grievances he claimed to have filed against her. Thus, Fillmore has forfeited any challenge to the summary judgment ruling in favor of NP Wise on that claim.

Fillmore has provided this Court with no facts or legal authority to support any challenge to the summary judgment rulings in favor of NP Wise and Dr. Myers, likely as a matter of choice. This Court should affirm judgment in their favor.

21

## ARGUMENT

### I.     Fillmore has Forfeited any Challenge to the Summary Judgment Ruling in Favor of NP Wise and Dr. Myers on his Deliberate Indifference Claims by Failing to Challenge Those Rulings in his Opening Appellant's Brief

The only claims that survived the district court's screening order against NP Wise and Dr. Myers were deliberate indifference claims against both for allegedly failing to adjust Fillmore's pain medication between May and August of 2022 and for failing to renew Fillmore's medical cuff permit.  The district court also permitted Fillmore to proceed against NP Wise on a retaliation claim.  (Doc. 7, pp. 3-4) Fillmore did not state an ADA or RA claim against either NP Wise or Dr. Myers.  (Doc. 1) Instead, Fillmore accused only defendant Jeffreys of violating the ADA and RA. (Doc. 1)

On appeal, Fillmore challenges only the district court's ruling with respect to his ADA and RA claims. (See Doc. 22) Fillmore's opening brief does not contain the words "deliberate indifference." Fillmore's brief contains no argument the district court erred in finding neither Dr. Myers nor NP Wise were deliberately indifferent to his medical conditions.  Fillmore says nothing in his opening brief about Dr. Myers' or NP Wise's alleged failure to adjust his medications.  Fillmore provided no legal authority regarding a deliberate indifference claim.

A party forfeits issues and arguments it fails to raise in its opening appellant's brief.  *Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019).  Moreover, "insufficiently developed issues and arguments are also forfeited."  (*Id.*)  See also *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("we repeatedly have made

22

clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues))".

Fillmore limits the arguments in his opening appellant's brief to the district court's ruling on his ADA and RA claims against the State Defendant. (Doc. 22, pp. 6-13) Since Fillmore's ADA and RA claims were brought against the State Defendant only, Fillmore's opening appellant's brief fails to challenge the deliberate indifference ruling in favor of NP Wise and Dr. Myers. As such, Fillmore has forfeited any challenge to the district court's summary judgment order in favor of NP Wise and Dr. Myers on Fillmore's deliberate indifference claims and this Court should affirm.

Likewise, Fillmore provided this Court with very limited information about the medical care provided by NP Wise or Dr. Myers. Fillmore's failure to provide this Court with any facts necessary to challenge the district court's summary judgment ruling in their favor provides another basis for summary affirmance with respect to NP Wise and Dr. Myers on Fillmore's deliberate indifference claims. *Olson v. Randstad HR Sols. Of Del. LLC*, 2025 U.S. App. LEXIS 2617, *9 (failure to provide facts or cite law in an opening brief forfeits those issues and arguments.).

Nor may Fillmore challenge the district court's summary judgment rulings on the deliberate indifference claims in his reply brief since "arguments raised for the first time in [a] reply brief are waived because they leave no chance to respond." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). For all these reasons, Fillmore has forfeited any challenge to the order granting summary judgment to NP

23

Wise and Dr. Myers on his deliberate indifference claims and this Court should affirm.

## II. If Preserved, This Court Should Affirm Summary Judgment in Favor of NP Wise and Dr. Myers on Fillmore's Deliberate Indifference Claims.

### A. Standard of Review

This Court reviews the district court's summary judgment ruling *de novo*. *Christensen v. Weiss,* 145 F. 4th 743, 751 (7th Cir. 2025) "Summary judgment is proper where there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions on file, affidavits and where the moving party is entitled to judgment as a matter of law." *Springer v. Durflinger,* 518 F. 3d 479, 483 (7th Cir. 2008). A party who fails to produce evidence sufficient to show an essential element to his case on which he bears the burden of proof cannot survive a summary judgment motion. *Gills v. Hamilton,* 164 F. 4th 640, 644 (7th Cir. 2026)

### B. The Deliberate Indifference Standard

Prison officials violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act or fail to act with "deliberate indifference to serious medical needs of prisoners." *Whitaker v. Dempsey*, 144 F. 4th 908, 916 (7th Cir. 2025) (*quoting Estelle v. Gamble,* 429 US 97, 104 (1976)).

The deliberate indifference standard "erects two high hurdles, which every inmate-plaintiff must clear." *Dunigan by Nyman v. Winnebago Cty.,* 165 F. 3d 587, 590 (7th Cir. 1999). A plaintiff must show (1) an objectively serious medical

condition; (2) to which a state official was deliberately, meaning subjectively, indifferent. *Johnson v. Dominguez,* 5 F. 4th 818, 824 (7th Cir. 2021) For purposes of this appeal, NP Wise and Dr. Myers do not challenge whether Fillmore's left arm and wrist conditions rose to the level of an objectively serious medical condition. However, Wise and Myers were not subjectively indifferent to Fillmore's conditions.

An alleged infliction of suffering through deliberate indifference only violates the Eighth Amendment "if that infliction is either deliberate, or reckless in the criminal law sense." *Burton v. Downey*, 805 F. 3d 776, 785 (7th Cir. 2015). Gross negligence or even recklessness is insufficient. *Hildreth v. Butler,* 960 F. 3d 420, 426 (7th Cir. 2020).

When the inmate's deliberate indifference claim involves a medical professional, the "professional judgment standard" applies. *Johnson v. Rimmer,* 936 F. 3d 695, 706-07 (7th Cir. 2019). This Court's review is deferential in such circumstances – the professional's decision "is presumptively valid" and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment … as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 707. Finally, an inmate may not demand specific treatment. *Forbes v. Edgar,* 112 F. 3d 262, 266 (7th Cir. 1997).

> **C.    Neither NP Wise nor Dr. Myers Were Deliberately Indifferent to Fillmore's Prescribed Medications or to His Request for Medical Permits**
>
> > *1. NP Wise exercised her professional judgment in responding to Fillmore's complaints.*

Fillmore's Eighth Amendment claim against NP Wise was based on her alleged failure to adjust his pain medication between May and August of 2022 and her failure to renew his medical cuffing permit.

NP Wise's only in-person visit with Fillmore was on May 20, 2022 at which time Fillmore had a waist chain permit in place until August of 2022. While NP Wise felt there was no medical indication for a waist chain permit during this visit, Fillmore admitted Wise did not cancel his ongoing permit. (Doc. 108-3, p. 38) Fillmore voiced no complaints of shoulder pain and only reported numbness in the left arm for which Wise requested an EMG evaluation. (Doc. 108-2, p. 3, ¶¶ 11-12) There is no indication in the contemporaneous medical record that Fillmore asked Wise to adjust his medications. (Doc. 108-6, p. 12) Nothing about this visit established that Wise was criminally reckless in her response to Fillmore's presentation. Instead, she responded to his complaints of numbness by ordering a study to explore the potential cause of his complaint. Wise never saw Fillmore in the healthcare unit again.

On June 10, 2022, NP Wise conducted a chart review of Fillmore's medical records after Fillmore reported pain in his arm. (Doc. 108-6, p. 16; Doc. 103-2, p. 3) Since Fillmore's x-ray demonstrated chronic arthritis in Fillmore's left wrist, Wise prescribed Mobic for six months, an anti-inflammatory drug utilized to treat arthritis. (Doc. 108-6, p. 16; Doc. 108-8, pp. 5, 25) Wise did not discontinue Fillmore's medical permit for a waist chain which continued through August of 2022. (Doc. 108-6, p. 16)

On July 25, 2022, NP Wise conducted a second chart review of Fillmore's medical records for medication and permit renewal. (Doc. 108-6, p. 21) Wise noted

26

Fillmore had already been prescribed Mobic for six months in June. (Id.) Wise's chart review showed no acute abnormalities and only chronic arthritis on his previous x-ray. (Id.) While Wise still believed in her medical opinion that Fillmore's arm length discrepancy did not qualify him for a waist chain permit, or that his condition warranted alternative cuffing, she did not cancel his ongoing waist chain permit. (Doc. 108-6, p. 21) However, based on her medical judgment, she did not believe renewal of the waist chain permit was medically necessary. (Doc. 103-2, p. 5, ¶ 20)

Accordingly, NP Wise established that she responded to Fillmore's complaints, ordered a test to explore the cause of his arm numbness, prescribed medication to address his arm complaints, and did not renew his waist chain permit in late July of 2022 because she believed in her professional judgment that a permit was unnecessary. Fillmore offered no evidence that Wise's decisions were based on anything other than her reasonable medical judgment.

And Fillmore admitted at deposition he has no proof NP Wise ever received or saw the notes he sent to the healthcare unit in June and July of 2022. (Doc. 108-3, pp. 39, 43-45) And even if she had, Wise conducted chart reviews in June and July of 2022, reviewed the testing done on Fillmore and his complaints, and exercised her medical judgment in prescribing Mobic and determining a waist chain permit was not medically necessary.

The district court correctly concluded that NP Wise refused Fillmore's request for a medical cuff permit in July of 2022 "only after reviewing the medical records" and "finding that the renewal was not medically necessary." (Doc. 129, p. 14) The

27

court found Wise provided appropriate medical treatment to Fillmore and that the Eighth Amendment did not require prison healthcare professionals to keep inmates pain free. (Doc. 129, pp. 15) The court was correct. See *Arce v. Wexford Health Sources Inc.,* 75 F. 4th 673, 681 (7th Cir. 2023) ("But the Eighth Amendment does not entitle incarcerated patients to their preferred pain medication, nor does it impose the unrealistic requirement that doctors keep patients completely pain-free.") (internal citations omitted) Summary judgment for NP Wise should be affirmed.

> ### 2. Dr. Myers exercised his professional judgment in responding to Fillmore's complaints.

Likewise, Dr. Myers did not recklessly ignore Fillmore's health requests and exercised his medical judgment at all times. When Fillmore returned to Lawrence on March 1, 2022 with an existing waist chain permit from Pontiac, the medical record indicates Dr. Myers authorized continuation of the permit to "bridge" the permit until Fillmore could be evaluated at Lawrence. (Doc. 103-1, pp. 2-3) The waist chain permit from Pontiac continued until August of 2022. (Doc. 108-5, p. 48; Doc. 108-9, p. 72)

Dr. Myers saw Fillmore for the first and only time on August 20, 2022 at about the time his waist chain permit would expire. (Doc. 108-6, p. 26) Fillmore did not complain of shoulder pain but said he had occasional numbness in his left arm and hand, and pain in his arm for which Tylenol had helped in the past. (Doc. 103-1, pp. 4-5; Doc. 108-6, p. 26) While Fillmore says Dr. Myers did not examine him, the contemporaneous record shows Dr. Myers observed good blood flow to Fillmore's wrist and found evidence of good motor control. (Doc. 108-6, p. 26) Dr. Myers reviewed the

x-ray results from April 2022 showing chronic arthritis, noted Fillmore was scheduled to have an EMG, and ordered Tylenol for 6 months. (Id.)

Dr. Myers noted Fillmore requested a waist chain permit at this visit (Id.), but in Dr. Myers' opinion, Fillmore's condition did not warrant a recommendation to security for alternative cuffing. (Doc. 103-1, pp. 4-5) A waist chain permit was not medically necessary in his opinion and Fillmore did not meet the IDOC criteria for a waist chain permit on August 20, 2022. (Doc. 103-1, p. 5) Both Dr. Myers and Fillmore testified about Lawrence's posted policy stating the criteria for waist chain permits to which Dr. Myers directed Fillmore during this visit. (Doc. 108-3, p. 26) Fillmore said the policy prohibited front cuffing and waist chain permits for any individual in maximum security. (Doc. 108-3, pp. 89-90) Dr. Myers could not override security policies, and did not believe Fillmore's condition warranted alternative cuffing in any event. (Doc. 103-1, pp. 4-5, ¶ 18)

Dr. Myers never saw Fillmore again. Fillmore's EMG on December 20, 2022 showed mild bilateral carpal tunnel. (Doc. 108-6, pp. 47-48) On December 23, 2022, a Nurse Practitioner prescribed a different anti-inflammatory medication for Fillmore (Diclofenac) and renewed Fillmore's Tylenol prescription for an additional year. (Doc. 108-6, p. 41) Fillmore was transferred to New Mexico on January 24, 2023.

While Fillmore argues the New Mexico facility "promptly accommodated his disability," (Doc. 22, p. 8), that alone does not establish deliberate indifference under the Eighth Amendment. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021) ("A difference of opinion among doctors is not sufficient evidence to

29

establish deliberate indifference.") Dr. Myers' decision to refuse Fillmore's request for a waist chain permit was based on his evaluation of Fillmore's condition and on his medical judgment. (Doc. 103-1, pp. 4-5, ¶¶ 18-19). Fillmore failed to prove that decision was so far outside of accepted professional standards to suggest the decision was not based on medical judgment. *Stewart,* at 763-64.

Summary judgment for Dr. Myers should be affirmed.

## II.  Fillmore has not Challenged the District Court's Order Granting Summary Judgment to NP Wise on Fillmore's First Amendment Retaliation Claim.

Nowhere in Fillmore's seven-page Argument does he challenge the district court's summary judgment ruling in favor of NP Wise on Fillmore's First Amendment retaliation claim. (Doc. 22) While Fillmore fleetingly refers to the Defendants' "retaliatory actions" without specificity, and to the fact he filed grievances, (Doc. 22, pp. 3, 13), Fillmore never challenged the district court's grant of summary judgment to NP Wise on this claim.

Fillmore provided this Court with no legal authority on the requirements for a retaliation claim under the First Amendment, said nothing about the timing or substance of his grievances, and has not asked this Court to reverse the district court's summary judgment ruling on the retaliation claim. Thus, Fillmore has clearly abandoned pursuit of that claim on appeal. *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F. 3d 1028, 1035 n. 2 (7th Cir. 2005) (arguments pressed in district court but not raised in an appellant's opening brief are forfeited and may not be advanced in a reply brief).

Accordingly, this Court should affirm summary judgment for NP Wise on Fillmore's First Amendment retaliation claim.

## CONCLUSION

Wherefore, for the foregoing reasons, the Defendants-Appellees Melissa Wise, NP and Percy Myers, M.D. respectfully request this Court affirm judgment in their favor.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: */s/Julie A. Teuscher*
One of the Attorneys for Defendants-Appellees, Melissa Wise, NP and Percy Myers, M.D.

Julie A. Teuscher
Patrick M. Creagh
Cassiday Schade LLP
222 W. Adams Street
Suite 2900
Chicago, IL  60606
(312) 641-3100
(312) 444-1669
jteuscher@cassiday.com
pcreagh@cassiday.com

31

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because: this brief contains 7,667 words excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(iii).

2.      This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because: this brief has been prepared in a proportionally-spaced type face using Microsoft Word in 12-point Century Schoolbook.

Respectfully submitted,

CASSIDAY SCHADE LLP

By:  */s/Julie A. Teuscher*
One of the Attorneys for Defendants-Appellees, Melissa Wise, NP and Percy Myers, M.D.

Julie A. Teuscher
Patrick M. Creagh
Cassiday Schade LLP
222 W. Adams Street
Suite 2900
Chicago, IL  60606
(312) 641-3100
(312) 444-1669
jteuscher@cassiday.com
pcreagh@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2026, I electronically filed the foregoing Response Brief of Defendants-Appellees Melissa Wise, NP and Percy Myers, M.D. with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

Respectfully submitted,

CASSIDAY SCHADE LLP

By:  */s/Julie A. Teuscher*
One of the Attorneys for Defendants-Appellees, Melissa Wise, NP and Percy Myers, M.D.

Julie A. Teuscher
Patrick M. Creagh
Cassiday Schade LLP
222 W. Adams Street
Suite 2900
Chicago, IL  60606
(312) 641-3100
(312) 444-1669
jteuscher@cassiday.com
pcreagh@cassiday.com

33