No. 25-2682

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| AARON FILLMORE, | ) | Appeal from the United States |
| | ) | District Court for the Southern |
| Plaintiff-Appellant, | ) | District of Illinois |
| | ) | |
| v. | ) | No. 3:22-cv-02705-GCS |
| | ) | |
| LATOYA HUGHES, MELISSA WISE, | ) | |
| and PERCY MYERS, | ) | The Honorable |
| | ) | GILBERT C. SISON, |
| Defendants-Appellees. | ) | Magistrate Judge Presiding. |

## BRIEF OF DEFENDANT-APPELLEE LATOYA HUGHES

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

**CALEB RUSH**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2274 (office)
(773) 590-6984 (cell)
Caleb.Rush@ilag.gov

Attorneys for Defendant-Appellee
Latoya Hughes

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................ii

JURISDICTIONAL STATEMENT .................................................................... 1

ISSUE PRESENTED FOR REVIEW ................................................................ 4

STATEMENT OF THE CASE ............................................................................ 5

    Fillmore's Complaint ................................................................................ 5

    Evidence at Summary Judgment ............................................................ 6

    Arguments on Summary Judgment........................................................ 12

    The Summary Judgment Order .............................................................. 13

SUMMARY OF ARGUMENT .......................................................................... 15

ARGUMENT ...................................................................................................... 16

    I.    The order granting summary judgment is reviewed *de novo* and may be affirmed on any ground supported by the record............... 16

    II.    This court should affirm the grant of summary judgment because there was no evidence that the Director acted with deliberate indifference. ......................................................................... 17

CONCLUSION .................................................................................................. 28

CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. J. T. ex rel. A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279,*
    605 U.S. 335 (2025) ........................................................................ 18

*Alexander v. Choate,*
    469 U.S. 287 (1985) ........................................................................ 26

*Arnett v. Webster,*
    658 F.3d 742 (7th Cir. 2011) ......................................................... 16

*Baughman v. Walt Disney World Co.,*
    685 F.3d 1131 (9th Cir. 2012) ....................................................... 26

*Brown v. Meisner,*
    81 F.4th 706 (7th Cir. 2023) .......................................................... 26

*Castelino v. Rose-Hulman Inst. of Tech.,*
    999 F.3d 1031 (7th Cir. 2021) ................................................. 17, 21

*Chatman v. Bd. of Educ. of City of Chi.,*
    5 F.4th 738 (7th Cir. 2021) ............................................................ 16

*Cohen v. City of Culver City,*
    754 F.3d 690 (9th Cir. 2014) ......................................................... 26

*Culp v. Caudill,*
    140 F.4th 938 (7th Cir. 2025) .................................................... 17-18

*Denius v. Dunlap,*
    330 F.3d 919 (7th Cir. 2003) ........................................................... 8

*Eagan v. Dempsey,*
    987 F.3d 667 (7th Cir. 2021) ......................................................... 19

*Frame v. City of Arlington,*
    616 F.3d 476 (5th Cir. 2010), *superseded on reh'g en banc,* 657 F.3d
    215 (5th Cir. 2011) ........................................................................ 26

*Greeno v. Daley*,
　　414 F.3d 645 (7th Cir. 2005).................................................................22

*Hernandez v. Dart*,
　　814 F.3d 836 (7th Cir. 2016)................................................................. 3

*Hill v. Tangherlini*,
　　724 F.3d 965 (7th Cir. 2013 .................................................................19

*Jaros v. Ill. Dep't of Corr.*,
　　684 F.3d 667 (7th Cir. 2012)............................................................ 18, 26

*Johnson v. Doughty*,
　　433 F.3d 1001 (7th Cir. 2006)......................................................... 19, 22

*Jones v. Van Lanen*,
　　27 F.4th 1280 (7th Cir. 2022) ............................................................... 6

*King v. Hendricks Cnty. Comm'rs*,
　　954 F.3d 981 (7th Cir. 2020)........................................................... 16, 17

*King v. Kramer*,
　　680 F.3d 1013 (7th Cir. 2012)..............................................................19

*Lacy v. Cook Cnty., Ill.*,
　　897 F.3d 847 (7th Cir. 2018)......................................................18, 19, 26

*Lange v. City of Oconto*,
　　28 F.4th 825 (7th Cir. 2022) ...............................................................23

*Leiser v. Kloth*,
　　933 F.3d 696 (7th Cir. 2019).......................................................... 19, 20

*McDaniel v. Syed*,
　　115 F.4th 805 (7th Cir. 2024) ......................................................18, 24, 25

*McGee v. Adams*,
　　721 F.3d 474 (7th Cir. 2013).......................................................19, 20, 25

*McGee v. Parsano*,
　　55 F.4th 563 (7th Cir. 2022) ...............................................................24

*Miller v. Chi. Transit Auth.*,
　　20 F.4th 1148 (7th Cir. 2021) ..............................................................16

*MMG Fin. Corp. v. Midwest Amusements Park, LLC*,
    630 F.3d 651 (7th Cir. 2011)............................................................... 16

*Randolph v. Rodgers*,
    170 F.3d 850 (8th Cir. 1999) ........................................................ 26

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*,
    729 F.3d 248 (3d Cir. 2013) ......................................................... 19

*Sinha v. Bradley Univ.*,
    995 F.3d 568 (7th Cir. 2021)..................................................... 16, 21

*Stewart v. Wexford Health Sources, Inc.*,
    14 F.4th 757 (7th Cir. 2021) ................................................20-22, 25

*Stokes v. Ill. Dep't of Corrs.*,
    ___ F.4th ___, 2026 WL 2207644 (7th Cir. July 31, 2026)................................. 27

*Tennessee v. Lane*,
    541 U.S. 509 (2004) ................................................................. 26

*Zemlick v. Burkhart*,
    164 F.4th 1004 (7th Cir. 2026) ..................................................... 24

## Constitutional Provisions

U.S. Const. amend. I ..................................................................... 6

U.S. Const. amend. VIII................................................................... 6

U.S. Const. amend. XIV ................................................................. 20

## Statutes

28 U.S.C. § 636(c)(1).................................................................... 2

28 U.S.C. § 1291 ....................................................................... 3

28 U.S.C. § 1331 ....................................................................... 2

28 U.S.C. § 1915A....................................................................... 2

iv

28 U.S.C. § 2107(a) ........................................................................................ 3

29 U.S.C. § 701 ............................................................................................... 1

42 U.S.C. § 1983 ............................................................................................. 1

42 U.S.C. § 12101 ........................................................................................... 1

## Rules

Fed. R. App. P. 4(a)(4)(A)(iv) ........................................................................ 3

Fed. R. App. P. 43(c)(2) .................................................................................. 1

Fed. R. Civ. P. 56(a) ..................................................................................... 16

Fed. R. Civ. P. 58 ........................................................................................... 2

Fed. R. Civ. P. 59(e) ....................................................................................... 3

Fed. R. Evid. 201(b) ....................................................................................... 8

7th Cir. R. 28(b) ............................................................................................. 1

7th Cir. R. 43 .................................................................................................. 1

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Aaron Fillmore's jurisdictional statement is not complete and correct.  As required by 7th Cir. R. 28(b), Defendant-Appellee Latoya Hughes, Director of the Illinois Department of Corrections, provides this statement.

Fillmore was formerly incarcerated at Lawrence Correctional Center ("Lawrence") in Illinois, and he is now an inmate in the custody of the New Mexico Corrections Department.  Doc. 1 at 1-2; Doc. 34.[1]  He filed a *pro se* complaint in the district court under 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* against then-Director Rob Jeffreys, in his official capacity; Defendants-Appellees Dr. Percy Myers and M. Wise, who are, respectively, a physician and nurse practitioner employed by Wexford Health Sources, Inc.; and Defendant L. Cunningham, who was the Health Care Unit Administrator at Lawrence.  Doc. 1 at 1-2.[2]  Fillmore claimed that the Director violated his rights under those statutes by denying him an alternative cuffing permit; that Dr. Myers, Wise, and Cunningham were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment by refusing to renew his alternative cuffing permit and failing to adequately treat his painful wrist and arm; and that Wise violated his rights under the First Amendment

---

[1]  The district court's docket, which constitutes the record on appeal, is cited as "Doc. __."  Fillmore's opening brief on appeal is cited as "AT Br. __."

[2]  Director Latoya Hughes has replaced former Director Rob Jeffreys.  *See* Fed. R. App. P. 43(c)(2); 7th Cir. R. 43; Doc. 124 at 1.

by denying him medical care and his requested permit in retaliation for his filing grievances. *Id.* at 13-16.

The district court screened the complaint under 28 U.S.C. § 1915A and determined that Fillmore stated claims against the Director under the ADA and Rehabilitation Act, an Eighth Amendment claim against Dr. Myers and Wise for deliberate indifference to a risk of serious harm, and a First Amendment retaliation claim against Wise. Doc. 7 at 4-7. The court dismissed Fillmore's claim against Cunningham for failure to state a claim. *Id.* at 5-7. The district court had subject matter jurisdiction over Fillmore's action under 28 U.S.C. § 1331 because it raised federal questions.

On November 30, 2022, Fillmore consented to entry of a final judgment by a magistrate judge. Doc. 11. On December 27, 2022, the Director consented. Doc. 19. On March 24, 2023, Dr. Myers and Wise consented. Doc. 46. The magistrate judge thus had jurisdiction to conduct all further proceedings under 28 U.S.C. § 636(c)(1). Docs. 4, 13.

On March 28, 2025, the magistrate judge granted summary judgment to the Director, Dr. Myers, and Wise, Doc. 129, thereby disposing of all claims against all parties. The same day, a separate judgment order was entered on the district court docket pursuant to Fed. R. Civ. P. 58. Doc. 130.

Even though the district court did not specify whether its earlier dismissal of Fillmore's claim against Cunningham was with prejudice, *see* Doc. 7 at 5-7, the summary judgment order was nevertheless final because the court indicated it was

2

finished with the case. *See Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016) ("The true test for determining finality under 28 U.S.C. § 1291 is . . . whether the district court has finished with the case." (cleaned up)); Doc. 7 at 7 (screening order directing clerk to "terminate Defendant Cunningham because there are no other claims against Cunningham" (emphasis and all-caps omitted)); Doc. 129 at 19 (summary judgment order directing clerk to "enter judgment . . . and to close the case").

On April 14, 2025, Fillmore filed a motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment. Doc. 135. The motion was timely because it was filed within 28 days of the entry of judgment. *See* Fed. R. Civ. P. 59(e). On September 10, 2025, the district court denied the motion. Doc. 146.

On September 23, 2025, Fillmore filed a notice of appeal. Doc. 147. The notice of appeal was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(4)(A)(iv) because it was filed within 30 days of the order denying the motion to alter or amend the judgment. This court has jurisdiction over Fillmore's appeal from a final judgment under 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

Whether summary judgment for the Director should be affirmed because the evidence was undisputed that she and other Department staff reasonably relied on medical professionals' judgment in denying Fillmore an alternative cuffing permit.

**STATEMENT OF THE CASE**

**Fillmore's Complaint**

In November 2022, Fillmore filed a verified complaint in the district court, which included the following allegations. Doc. 1. While incarcerated at Lawrence, Fillmore was on administrative detention status, requiring handcuffs, chains, and leg shackles every time he left his cell. *Id.* at 2, 4. Fillmore's left wrist and arm were fractured when he was seven years old, which caused him to lose motion and function, caused him "serious acute pain," and left his left arm three inches shorter than his right. *Id.* at 3-4, 27. Fillmore also alleged that he has had arthritis in his right shoulder since 2009, resulting in loss of motion and function and "acute pain." *Id.* at 4. According to Fillmore, both injuries caused him pain when he was handcuffed behind his back. *Id.* at 4-5. Before 2022, prison staff cuffed Fillmore in front or with a waist chain, initially by "custom and practice" and later according to periodically renewed medical permits. *Id.* at 5-6, 19-26.

Dr. Myers and Wise were a doctor and a nurse practitioner, respectively, at Lawrence. *Id.* at 2. Fillmore requested treatment for his left wrist pain and received pain medication, but he repeatedly complained about Wise not providing effective treatment. *Id.* at 6-8, 10-11. In July 2022, Wise refused to renew his permit for a waist chain. *Id.* at 9, 28. According to Fillmore, he could not access the shower, the yard, his job, or the law library because it was too painful to be cuffed behind his back. *Id.* Fillmore alleged that he wrote to the Director and the Department's ADA Coordinator to request a waist chain permit, but they did not "take any corrective

5

action." *Id.* at 10, 29-32. He also allegedly asked Dr. Myers to renew the permit, but Dr. Myers did not. *Id.* at 11. In his complaint, Fillmore requested damages and injunctive relief. *Id.* at 17.

On screening, the district court determined that Fillmore stated claims against the Director under the ADA and Rehabilitation Act, an Eighth Amendment claim against Dr. Myers and Wise for deliberate indifference to a risk of serious harm, and a First Amendment retaliation claim against Wise. Doc. 7 at 4-7. In January 2023, Fillmore was transferred to a prison in New Mexico, after which he informed the district court that his request for injunctive relief was moot. Docs. 34, 37.

**Evidence at Summary Judgment**

All parties moved for summary judgment. Docs. 100, 107-09, 125.[3] The evidence submitted in support of those motions showed the following. When Fillmore was seven years old, he suffered a "serious physical injury and compound fracture" to his left wrist and arm, which required multiple surgeries and left his left arm three inches shorter than his right. Doc. 1 at 3. According to Fillmore, he still "suffers serious acute pain in his left wrist, hand and arm" because of the injury. *Id.* at 3.

Fillmore has been incarcerated since 1994. Doc. 1 at 4. According to Fillmore, he was diagnosed with arthritis in his right shoulder in 2009, *id.*, but a 2009 medical

---

[3] The district court ultimately denied Fillmore's motion for summary judgment. Doc. 129 at 11, 15, 16, 19. On appeal, he does not dispute that ruling. *See* AT Br. 1, 6-13. Accordingly, this brief does not discuss Fillmore's motion in detail. But, since the motion is verified, Doc. 100, this brief includes it among the evidence submitted on summary judgment. *See Jones v. Van Lanen*, 27 F.4th 1280, 1285 (7th Cir. 2022) ("[T]he law allows verified complaints — containing not just allegations but sworn statements of fact — to serve as evidence for purposes of summary judgment.").

6

report indicated that Fillmore was evaluated for right shoulder pain and that there was "no deformity" or "history of trauma," and states, "arthritis?"  Doc. 100 at 11-12. From 2013 to 2020, and again from March 2022 until January 2023, he was at Lawrence.  Doc. 108-3 at 10-11.  From 2020 until March 2022, he was at Pontiac Correctional Center ("Pontiac").  *Id.*

Fillmore was in administrative detention or segregation while he was at Lawrence and Pontiac.  Doc. 108-3 at 17-18; *see also* Doc. 1 at 4 (administrative detention since 2003 or earlier).  When inmates move between different areas in the administrative detention unit, the Department requires them to be handcuffed in the back unless medically contraindicated.  Doc. 125-4 at 8.

Fillmore alleged that cuffing behind his back caused him pain.  Doc. 1 at 4-5. Before 2018, Department staff at Lawrence informally allowed him to be cuffed in front or with a waist chain.  *Id.* at 5.  Starting in 2018, some medical professionals issued Fillmore medical permits for alternative cuffing (in front, with a waist chain, or a security belt).  *Id.* at 5-6, 19-26.  One of those permits noted "chronic wrist/arm disability seen on xrays."  *Id.* at 22.  Two others noted that Fillmore's left arm was three inches shorter and "S/P ORIF 1982," which is an acronym meaning Fillmore had a fracture surgically repaired with hardware.  *Id.* at 23, 24.[4]

---

[4]  Specifically, "S/P ORIF" stands for "status post open reduction and internal fixation." Cleveland Clinic, Open Reduction and Internal Fixation (ORIF), https://my.clevelandclinic.org/health/procedures/open-reduction-and-internal-fixation-orif (last visited August 5, 2026); Nurse.com, What Does S/P Mean in Medical Terms?, https://www.nurse.com/nursing-resources/definitions/what-does-sp-mean (last visited August 5, 2026).  The Director asks the court to take judicial notice of

7

Fillmore was not uniformly granted alternative cuffing permits from 2018 to 2022, however.  In September 2019, a nurse practitioner at Lawrence ordered a permit "[d]iscontinue[d]."  Doc. 125-3 at 236.  The Director denied Fillmore's grievance regarding the discontinuance of his permit, stating:  "Waist chain permits are determined by MD.  Treatment is at the discretion of [Department] physicians.  Offender may submit a request to healthcare for any issues that arise."  Doc. 24 at 11 (cited in Doc. 100 at 4).

Dr. Myers was employed by Wexford Health Sources, Inc., as the Medical Director at Pinckneyville Correctional Center.  Doc. 108-1 at 1.  He also provided care to some patients at Lawrence when needed.  *Id.*  Wise was employed by Wexford as a nurse practitioner at Lawrence.  Doc. 108-2 at 1.

When Fillmore was transferred back to Lawrence in March 2022, Dr. Myers issued him a waist chain permit through August 2022, as a continuation of the previous permit until Fillmore could be re-evaluated by a medical provider.  Doc. 1 at 26; Doc. 108-1 at 2-3.  Also in March 2022, Fillmore was seen by a nurse, whom he asked to continue his waist chain permit.  Doc. 125-3 at 61.  The nurse ordered an x-ray of his left wrist, *id.*, which took place the following month, Doc. 1 at 27.  The radiology report stated:  "No acute fractures or dislocations are noted.  The ulna is displaced superior and dorsally.  An old ulnar styloid process fracture is also noted.  Moderate degenerative changes are present.  The surrounding soft tissues are

---

the meaning of this acronym because it is "not subject to reasonable dispute."  Fed. R. Evid. 201(b); *see also Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) ("Judicial notice may be taken at any time, including on appeal.").

8

normal." *Id.* The report summarized the findings as "[c]hronic and degenerative changes." *Id.*

In April 2022, Fillmore saw a nurse about left wrist pain and was prescribed ibuprofen. Doc. 125-3 at 63. The next month, Fillmore had an appointment with Wise, who evaluated Fillmore's left arm and the x-ray results. *Id.* at 73. Fillmore reported numbness and decreased range of motion, but he did not complain of shoulder pain. *Id.*; Doc. 108-2 at 3; Doc. 113 at 3. Wise noted the "obvious shortening" of his left arm and the radiology report's conclusion of "chronic [and] degenerative" changes. Doc. 125-3 at 73. She concluded that he did not qualify for a waist chain permit. Doc. 108-2 at 3. In her opinion, a waist chain permit was not medically necessary and Fillmore's condition "did not warrant any recommendations to security staff to alter the cuffing procedures for him." *Id.* at 5. She also ordered an electromyography ("EMG") test "to evaluate for the numbness" of the left arm. *Id.*

On July 18, 2022, Fillmore submitted a grievance about the treatment of his left wrist and arm. Doc. 108-4 at 3. He described the permanent injury to his arm, including x-ray results showing "bone displacement and degenerative narrowing in left radial carpal joint," and stated that he experienced "serious tormenting pain and numbing" with no medication "for weeks." *Id.* at 3-4. He requested pain medication, that his "medical concerns be addressed," and that his "medical permit be renewed" as an "ADA accommodation." *Id.* at 3. On August 4, 2022, a grievance officer recommended denying the grievance, stating that, according to Health Care Unit

9

Administrator Cunningham, Fillmore had been prescribed medication in June, July, and August 2022.  *Id.* at 2.  Lawrence's warden agreed with the recommendation and denied the grievance.  *Id.*

On July 25, 2022, Wise reviewed Fillmore's chart and noted that his arthritis medication was renewed the previous month.  Doc. 125-3 at 82.  She also sent Fillmore a summary stating, "Chart review was performed [and] at this time you do not qualify for waist chain permit.  Will not renew permit."  *Id.* at 257.

The next day, Fillmore submitted a request to Cunningham and the ADA Coordinator for renewal of the waist chain permit as a disability accommodation.  Doc. 1 at 29; *see also id.* at 9.  He described his disability as:  "left arm [being three inches] shorter than [his] right, chronic and degenerative changes, [and] displaced ulna."  *Id.* at 29  One week later, Cunningham denied the request, noting, "Medical concern addressed by on-site provider."  *Id.*; *see also id.* at 9.

On July 31, 2022, Fillmore sent a letter to the Director and Department ADA Coordinator, requesting a waist chain permit as a disability accommodation and stating that being cuffed behind his back was painful.  *Id.* at 30-32.  He explained that he suffered a right shoulder rotator cuff injury in 2009, and that x-rays showed degenerative changes to his left wrist.  *Id.* at 31.

On August 11, 2022, Fillmore was seen by a nurse because of pain or numbness in his left wrist and was prescribed acetaminophen.  Doc. 125-3 at 85.  He also requested a waist chain permit.  *Id.*

On August 20, 2022, Dr. Myers saw Fillmore.  Doc. 108-1 at 4; Doc. 125-3 at 87.[5]  Fillmore complained of pain in his left arm and occasional numbness in his hand and arm.  Doc. 108-1 at 4.  Dr. Myers observed "good blood flow to the wrist, and good motor control."  *Id.*  Fillmore did not complain of shoulder pain.  *Id.* at 5; Doc. 113 at 3.  In Dr. Myers's opinion, Fillmore did not meet the Department's criteria for a waist chain permit, his "condition did not warrant any recommendations to security staff to alter the cuffing procedures for him," and a waist chain permit was not medically necessary.  Doc. 108-1 at 4-5.  In Dr. Myers's declaration, he stated that the Department's alternative cuffing policy was posted in the examination rooms.  *Id.* at 4.  If he denied a request for a waist chain permit, it was his practice to "show the patient the posted policy and explain why they did not qualify."  *Id.*

The same day, Fillmore appealed the denial of his grievance, describing his cuffing permit history and requesting a permit renewal because cuffing behind his back caused "wanton infliction of pain and further injury."  Doc. 108-4 at 2, 4.  Fillmore added that Dr. Myers "told [him] that pursuant to new policy [he] will be denied renewal of [his] waist chain medical permit," and that Wise "void[ed]" his permit in retaliation for his July grievance.  *Id.*  On August 29, 2022, the Department's Administrative Review Board and the Director denied Fillmore's appeal, stating:  "Grievant has access to medical care.  Treatment (including

---

[5]  In Dr. Myers' declaration, he stated that he "saw [Fillmore] for an evaluation."  Doc. 108-1 at 4.  Fillmore stated that "Dr. Myers never physically or medically evaluated" him.  Doc. 113 at 3; *see also* Doc. 108-3 at 26, 67.

11

medications and permits) is at the discretion of . . . Physicians.  Grievant may send a request to healthcare for any issues that arise." *Id.* at 1.

After Fillmore's alternative cuffing permit expired in August 2022, the guards on duty often insisted on cuffing him behind his back if he was going to leave his cell. Doc. 1 at 9.  On many dates from August 2022 through January 2023, he did not access the law library kiosk, the shower, his job as a porter, or the yard because he was allowed to leave his cell only if he was cuffed behind his back.  Doc. 108-3 at 94-100; Doc. 113 at 5-6.  On some other dates during this time period, Fillmore did access these amenities because the guards on duty allowed alternative cuffing.  Doc. 108-3 at 94-100.

In December 2022, Fillmore underwent the EMG test.  Doc. 125-3 at 108.  The findings were "suggestive of mild, bilateral . . . carpal tunnel syndrome," with the left worse than the right.  Doc. 125-3 at 109; *see also* Doc. 108-1 at 5; Doc. 108-2 at 5.

**Arguments on Summary Judgment**

In support of her motion, the Director argued in relevant part that she was not liable because she and Department staff reasonably relied on medical professionals' opinions, there was no evidence that she was personally aware of Fillmore or his alleged disability, Fillmore did not allege that he was physically unable to be cuffed behind his back, and there was no evidence of deliberate indifference, among other points.  Doc. 125 at 9-13.  Dr. Myers and Wise argued that Fillmore could not show deliberate indifference because they provided him with appropriate treatment, including in evaluating his request for an alternative cuffing permit, and Fillmore

12

submitted no medical evidence to the contrary.  Doc. 108 at 13-17.  They further argued that there was no evidence that Wise retaliated against him in denying his alternative cuffing permit.  *Id.* at 18-19; *see also* Doc. 121 (reply).

In response to the Director's motion, Fillmore argued that his wrist conditions were disabilities that required an alternative cuffing accommodation and the denial of an alternative cuffing permit was sufficient evidence of her discriminatory intent.  Doc. 127 at 1-7.  Opposing Dr. Myers and Wise's motion, Fillmore argued that he had an obvious and serious medical condition, that Dr. Myers and Wise were deliberately indifferent to his serious medical needs when they failed to renew his permit, and that Wise's failure to renew his permit was retaliatory.  Doc. 113 at 6-9.

**The Summary Judgment Order**

The district court granted the Director's and Dr. Myers and Wise's motions for summary judgment, and denied Fillmore's.  Doc. 129.  As to the Director's motion, the court ruled that the Department did not "den[y] him access to a program or activity because of his disability," so it did not violate the ADA or Rehabilitation Act.  Doc. 129 at 10.  The court noted Dr. Myers and Wise's determinations that waist cuffing was not medically necessary.  *Id.*  Additionally, Fillmore alleged that rear cuffing caused him pain but not that it was physically impossible or that it caused him further injury.  *Id.*  Fillmore also attended programs or services when prison staff did not require him to be cuffed in back, so he failed to show that "he was denied benefits of any services, programs, or activities because of his disability."  *Id.*

13

at 11. The court did not address the Director's arguments regarding deliberate indifference and reliance on medical professionals' judgment. *See id.* at 9-11.

As to Dr. Myers and Wise's motion, the court ruled that they were not deliberately indifferent to Fillmore's serious medical needs. *Id.* at 13-15. In particular, when Dr. Myers and Wise each denied renewal of Fillmore's medical cuff permit, they reviewed his medical records including the April 2022 x-ray. *Id.* Also, Fillmore's allegation that he continued to experience pain after Wise prescribed pain medication did not show deliberate indifference. *Id.* at 15. Rather, the medical records showed that Dr. Myers and Wise provided appropriate treatment in response to Fillmore's pain symptoms, even if it was not the treatment that he wanted. *Id.* at 16. Finally, Fillmore's retaliation claim against Wise could not succeed because there was no evidence that Wise saw his grievances, the denial of the medical cuff permit did not deter his protected activity, and the evidence did not support an inference that Wise's motive for denying the cuff permit was retaliatory. *Id.* at 17-19.

Fillmore filed a motion to alter or amend the judgment, arguing that cuffing behind his back caused him pain and was physically impossible, so the failure to renew his medical cuff permit "forced [him] to deny/refuse services outside of his cell." Doc. 135 at 1-2. The district court denied the motion, ruling that there was no manifest error of law or fact, and pointing to Fillmore's deposition testimony that cuffing behind his back caused him pain but was physically possible. Doc. 146 at 3-4.

Fillmore appealed. Doc. 147.

14

## SUMMARY OF ARGUMENT

Summary judgment in favor of the Director should be affirmed. Fillmore was required to show deliberate indifference to prevail on his remaining claims for damages under the ADA and Rehabilitation Act for declining an alternative cuffing permit. But non-medical prison staff are not deliberately indifferent when they reasonably rely on medical professionals' judgment. In particular, this court has repeatedly held that non-medical prison staff are not deliberately indifferent when they decline an accommodation that is not obviously needed and not ordered by medical professionals.

Here, the evidence was undisputed that the Director and other Department staff relied on Dr. Myers and nurse practitioner Wise's opinions that an alternative cuffing permit was not medically necessary. Further, their reliance was reasonable because Fillmore alleged that he needed alternative cuffing based on medical conditions — including a right shoulder rotator cuff injury and x-ray results showing degenerative narrowing of the carpal joint — that were not obvious to a layperson. Fillmore was seen multiple times by medical professionals, so the Director and Department staff had no reason to believe he was being mistreated or not treated at all. Indeed, Fillmore has abandoned his claims that the medical professionals treating him were themselves deliberately indifferent to any serious medical need. Holding non-medical prison staff liable under these circumstances would contravene established precedent encouraging them to defer to professional medical judgments.

15

**ARGUMENT**

I.    **The order granting summary judgment is reviewed *de novo* and may be affirmed on any ground supported by the record.**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Miller v. Chi. Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021). The moving party may meet this burden by showing that there is no material dispute of fact "with respect to an essential element" of the nonmovant's substantive claim, *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 657 (7th Cir. 2011), or by pointing out the absence of evidence to support the nonmoving party's case, *Chatman v. Bd. of Educ. of City of Chi.*, 5 F.4th 738, 744 (7th Cir. 2021). If that burden is met, the nonmovant must submit evidence showing that a genuine issue exists for trial. *MMG Fin. Corp.*, 630 F.3d at 656. Otherwise, the movant "need not produce evidence of its own" but instead is entitled to judgment as a matter of law. *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011). In determining whether there is sufficient evidence to avoid summary judgment, this court "construe[s] all facts in the record and reasonable inferences in the light most favorable to the nonmoving party." *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020).

"But this does not extend to drawing inferences that are supported by only speculation or conjecture." *Id.* Moreover, "conclusions must be supported by specific facts, otherwise they are not sufficient to avoid summary judgment." *Sinha v. Bradley Univ.*, 995 F.3d 568, 573 (7th Cir. 2021) (cleaned up). The court is not

16

"obligated to assume the truth of a nonmovant's conclusory allegations on faith or to scour the record to unearth material factual disputes." *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1040 (7th Cir. 2021) (cleaned up).

This court "review[s] the district court's grant of summary judgment *de novo*." *King v. Hendricks Cnty.*, 954 F.3d at 983. On *de novo* review, this court "may affirm summary judgment on any ground supported by the record, as long as the parties adequately presented the issue before the district court and the nonmoving party had an opportunity to contest it." *Id.* at 984.

**II.    This court should affirm the grant of summary judgment because there was no evidence that the Director acted with deliberate indifference.**

Fillmore could not prevail on his claims for damages because there was no evidence that the Director or Department staff were deliberately indifferent to his rights under the ADA and Rehabilitation Act. Rather, they reasonably relied on medical professionals' judgment that an alternative cuffing permit was unnecessary. Thus, although the district court did not explicitly state that there was no evidence of deliberate indifference on the part of the Director or other Department staff, *see* Doc. 129 at 10-11, it is appropriate to affirm summary judgment on that ground because the issue was presented before the district court and Fillmore had an opportunity to contest it, *see King v. Hendricks Cnty.*, 954 F.3d at 984; Doc. 125 at 9-10, 12-13; Doc. 127 at 4.

Although Fillmore's claims against the Director were based on two separate statutes, the legal standard for both claims was "functionally identical." *Culp v.*

17

*Caudill*, 140 F.4th 938, 942 (7th Cir. 2025) (cleaned up).  Title II of the ADA and Section 504 of the Rehabilitation Act of 1973 both "prohibit discrimination on the basis of disability in a wide variety of contexts." *A. J. T. ex rel. A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 339 (2025).  Accordingly, to establish a claim under either statute, a plaintiff must show "that (1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *McDaniel v. Syed*, 115 F.4th 805, 822 (7th Cir. 2024) (cleaned up); *accord Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons").

Additionally, to recover compensatory damages under the ADA or the Rehabilitation Act, a plaintiff must show that the defendant was deliberately indifferent to his rights under those statutes. *Lacy v. Cook Cnty., Ill.*, 897 F.3d 847, 862-63 (7th Cir. 2018).  "To show deliberate indifference, it is enough that a plaintiff prove the defendant disregarded a strong likelihood that the challenged action would result in a violation of federally protected rights." *A. J. T.*, 605 U.S. at 345; *accord Lacy*, 897 F.3d at 863 (deliberate indifference requires "both knowledge that a harm to a federally protected right is substantially likely and a failure to act upon that likelihood" (cleaned up)).  "This definition of deliberate indifference in the [Rehabilitation Act] and the ADA context is consistent with [the] standard of

18

deliberate indifference in the context of § 1983 suits by prison inmates." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 n.23 (3d Cir. 2013).

Deliberate indifference is a subjective standard. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).[6] "To be deliberately indifferent, the defendants must have acted with a sufficiently culpable state of mind." *Id.* (cleaned up). "Negligence — even gross negligence — is insufficient to meet this standard." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Rather, deliberate indifference is "essentially a criminal recklessness standard." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (cleaned up).

"A prison official generally does not act with deliberate indifference if she reasonably relied on the judgment of medical personnel." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (cleaned up); *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (non-medical officers "were entitled to defer to the judgment of jail health professionals so long as they did not ignore the prisoner" (cleaned up)). "As a practical matter, it would be unwise to require more of a nonmedical staff member than reliance on prison medical staff, as the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments." *Leiser v. Kloth*, 933 F.3d 696, 705 (7th Cir. 2019) (cleaned up). "The only exception to this rule is that nonmedical officers may be found deliberately

---

[6] Because the standards are the same, this brief cites cases addressing deliberate indifference under the ADA and Rehabilitation Act, *e.g.*, *Lacy*, 897 F.3d 847, and under the Eighth Amendment, *e.g.*, *Johnson*, 433 F.3d at 1001.

indifferent if they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (cleaned up).

This rule applies equally in cases, like this one, involving disability or medical accommodations. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760, 767-68 (7th Cir. 2021) (notwithstanding inmate's allegation that restrictive security device "caused extreme pain because of his existing medical conditions," assistant warden was not "deliberately indifferent to [inmate's] serious medical needs by refusing to grant him an exemption" because assistant warden reasonably delegated assessment of medical concerns to medical personnel); *McGee v. Adams*, 721 F.3d at 483 (affirming summary judgment on Fourteenth Amendment claim for deliberate indifference to detainee health because non-medical-professional defendants were "entitled to rely on the medical professionals' determination that [detainee] could wear metal leg restraints"); *see also Leiser*, 933 F.3d at 705 ("[I]t is not unreasonable for a non-medical prison staff member to assume that a treating physician would have ordered an accommodation if one was necessary.").

Here, summary judgment should be affirmed because Fillmore's case is not meaningfully distinguishable from *Stewart* or *McGee v. Adams*. The undisputed evidence shows that the Director and other Department staff reasonably relied on Dr. Myers and Wise's medical opinions that alternative cuffing was not necessary. In Fillmore's own grievance and letters requesting accommodation, he described his injuries as "bone displacement and degenerative narrowing in left radial carpal joint"

20

shown on x-rays, Doc. 108-4 at 3; *see also* Doc. 1 at 29, 31, and a right shoulder rotator cuff injury, Doc. 1 at 31.  Non-medical prison staff are not trained to evaluate x-ray results or determine what accommodation may be appropriate for these kinds of injuries.  *See Stewart*, 14 F.4th at 768 ("A complicated assessment of carpal tunnel syndrome or a rotator cuff injury is beyond the expertise of a prison administrator.").

Although Fillmore's shorter left arm may have been obvious, he submitted no evidence that an alternative cuffing permit was obviously necessary simply because his left arm was three inches shorter.  *See* Doc. 1 at 4 (Fillmore's allegation that his "permanent left arm/wrist physical injury and disability is clear and obvious to any lay person" and "known to each defendant herein"); *cf.* Doc. 108-2 at 3 (Wise's statement that "[a]lthough [Fillmore's] left arm was shorter than his right arm, [he] did not qualify for a waist chain permit as he did not meet the criteria").  As noted, conclusory allegations not supported by specific facts are insufficient.  *Castelino*, 999 F.3d at 1040; *Sinha*, 995 F.3d at 573.  Indeed, the different conclusions reached by different medical professionals at different times regarding the need for an alternative cuffing accommodation, *see* Doc. 1 at 5-6, 19-26; Doc. 108-1 at 4-5; Doc. 125-3 at 73, 82, 87, 236, 257, only reinforce that the need for a cuffing accommodation based on his shorter left arm would not have been obvious to a layperson.

Moreover, the Director and other Department staff did not ignore Fillmore. On the contrary, in responding to Fillmore's grievances, the Director and other Department employees appropriately referred him to medical professionals.  *See* Doc.

108-4 at 1 ("Grievant may send a request to healthcare for any issues that arise."); *see also* Doc. 1 at 29; Doc. 24 at 11; Doc. 108-4 at 2 (other written complaints addressed similarly). And although Fillmore alleged that he made contemporaneous informal requests for an alternative cuffing permit, *see* Doc. 1 at 29-32, "[a] non-medical prison official cannot be held deliberately indifferent simply because he failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006) (cleaned up). "At most, an apparent failure to get back with a prisoner about his informal complaint evinces a negligent handling of the complaint and not deliberate indifference." *Id.* (cleaned up); *see also Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005) ("We do not think [a non-medical prison official's] failure to take further action once he had referred the matter to the medical providers can be viewed as deliberate indifference.").

Nor did the Director or other Department staff have reason to believe that medical personnel were mistreating or failing to treat Fillmore. Rather, he had multiple appointments with medical staff who ordered prescriptions, an x-ray, and an EMG test for him. Doc. 1 at 27; Doc. 125-3 at 61, 63, 73, 85, 87, 109. "Where the facts demonstrated that the medical personnel were evaluating each one of the prisoner's requests and deciding whether, at that particular time, he required an exemption," there was no evidence that prison officials "turned a blind eye to mistreatment." *Stewart*, 14 F.4th at 767 (cleaned up).

22

For his part, Fillmore asserts that his shorter left arm would have been "plain and obvious to any lay person" and the stated reason for one of his past permits was "that his left arm was three inches shorter than his right." AT Br. 2 (citing Doc. 1 at 23). But the permit in question also noted that Fillmore's shorter arm had a non-obvious history and underlying cause: previous surgery using hardware to repair a fracture. Doc. 1 at 23 ("S/P ORIF 1982"); *see also* Doc. 1 at 24 (same note in subsequent permit). Nor was there any evidence to suggest that a non-medical prison administrator would have known that the shortness of Fillmore's arm would make alternative cuffing necessary. And even if a medical professional had opined that a shorter arm necessarily required alternative cuffing, that would not demonstrate that it was obvious to a layperson.

Fillmore also asserts that Wise's July 2022 decision not to renew his alternative cuffing permit "was not made after examining Fillmore but rather via a '[c]hart review.'" AT Br. 3 (citing Doc. 1 at 28). But Wise evaluated him in person just two months earlier and noted, "No obvious reason for waist chain permit is seen at this time." Doc. 125-3 at 73. Likewise, although Fillmore's August 2022 grievance appeal accused Wise of retaliation for his July 2022 grievance, Doc. 108-4 at 4, Wise first determined that Fillmore did not qualify for an alternative cuffing permit two months earlier, Doc. 125-3 at 73. However Fillmore may now criticize Wise's medical judgment, he has not presented evidence that the Director or Department staff knew that Wise or Dr. Myers were mistreating Fillmore. *See Lange v. City of Oconto*, 28 F.4th 825, 841 (7th Cir. 2022) ("The relevant inquiry is knowledge, and evidence that

23

the defendant may have been wrong about the plaintiff's disability is not evidence that the defendant had knowledge that it was likely violating the plaintiff's rights.").

Fillmore repeatedly emphasizes that rear cuffing was painful for him, but his complaints of pain did not require non-medical prison staff to second-guess the medical professionals' judgment. *See* Doc. 1 at 1, 4, 5; AT Br. 2, 3, 6, 10, 12. Rather, "correctional staff must discriminate between serious risks of harm and feigned or imagined ones," so they need not "be credulous in response to detainees' complaints or assess risks flawlessly." *Zemlick v. Burkhart*, 164 F.4th 1004, 1012 (7th Cir. 2026) (cleaned up). Moreover, the deliberate indifference standard does not obligate non-medical prison staff "to override the judgment of medical professionals" even if "an inmate is in obvious distress and even when the medical staff has misdiagnosed an inmate — or worse, accused him of faking a very real illness." *McGee v. Parsano*, 55 F.4th 563, 573 (7th Cir. 2022); *see also id.* at 574 (applying same standard as in ADA and Rehabilitation Act context). Here, it would be particularly inappropriate to allow damages claims to proceed against the State after prison staff relied on medical professionals' judgment, as Fillmore does not even assert on appeal that the medical professionals (Dr. Myers and Wise) themselves were deliberately indifferent when they denied his medical cuffing permit. *See* AT Br. 1, 6-13.

Next, Fillmore cites *McDaniel*, 115 F.4th 805, AT Br. 11, but that case is inapposite. There, McDaniel — an inmate who used a wheelchair and four-wheel walker to move, *see* 115 F.4th at 816 — claimed that the Wisconsin Department of Corrections was deliberately indifferent to his rights under the ADA and

24

Rehabilitation Act when it failed to provide him with a no-stairs unit, and this court held there was sufficient evidence to survive summary judgment, *id.* at 829. But the court did not hold that non-medical prison staff can be liable even when they reasonably rely on medical professionals' judgment. *See id.* On the contrary, there was evidence supporting that the plaintiff inmate's need for a no-stairs unit was obvious to non-medical prison staff. *See id.* at 812 ("[P]rison staff knew he was missing meals and medication because of his pain and difficulty in getting up and down stairs."); *id.* at 816 (taking as true McDaniel's assertion that he "missed approximately 600 meals in one year . . . and that prison staff knew he was regularly missing meals"); *id.* at 817 (McDaniel could only "navigate the stairs" with help). Indeed, there was evidence that "[o]ther prisoners carried McDaniel's walker for him while he used the railing to move or sat and scooted down the stairs" or "put their arms around him [to] walk McDaniel up the stairs," but "prison staff eventually forbade McDaniel from asking prisoners, guards, or anyone else for help" or from scooting up and down the stairs on his buttocks. *Id.* at 817. Fillmore's complaints that it was painful to be cuffed behind his back are a far cry from the evidence in *McDaniel*.

Moreover, *McDaniel* discussed medical judgment only in connection with the requirement that a plaintiff establish that he "was denied access to programs or services because of his disability," *id.* at 825, not in connection with the requirement that he prove deliberate indifference, *id.* at 829. And *McDaniel* did not overrule or even criticize *Stewart* or *McGee v. Adams*, both of which held that non-medical prison

25

employees are not deliberately indifferent when they rely on medical professionals' judgment in denying an accommodation.  Thus, it offers little support to the notion that Fillmore had evidence that the Director was deliberately indifferent to a violation of his rights under the ADA or the Rehabilitation Act.

The other cases cited in Fillmore's brief likewise fail to support that the Director or other Department staff were deliberately indifferent to his rights under the ADA or Rehabilitation Act.  *See* AT Br. 7-12.  For instance, he cites cases that did not address prison officials' reliance on medical professionals' judgment.  *See Brown v. Meisner*, 81 F.4th 706, 708-09 (7th Cir. 2023); *Lacy*, 897 F.3d 847; *Jaros*, 684 F.3d at 671-73; *Randolph v. Rodgers*, 170 F.3d 850 (8th Cir. 1999).  His remaining cited cases did not involve prisons at all, much less prison officials' reliance on medical professionals' judgment.  *See Tennessee v. Lane*, 541 U.S. 509, 513-14 (2004) (wheelchair users' claims about denial of access to courthouses); *Alexander v. Choate*, 469 U.S. 287, 289-90 (1985) (reduction of Medicaid coverage); *Cohen v. City of Culver City*, 754 F.3d 690, 693 (9th Cir. 2014) (claim by pedestrian who used cane regarding sidewalk accessibility); *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1132 (9th Cir. 2012) (accessibility at theme park); *Frame v. City of Arlington*, 616 F.3d 476, 479-80 (5th Cir. 2010), *superseded on reh'g en banc*, 657 F.3d 215 (5th Cir. 2011) (wheelchair users' claims that sidewalks were not accessible).[7]

Finally, Fillmore takes issue with the district court's reasoning and conclusion that there was no evidence that he was denied services as a result of the denial of an

---

[7]  Fillmore mistakenly describes *Frame* as involving a "disabled detainee."  AT Br. 9.

alternative cuffing permit.  *See* AT Br. 8-13.  But as explained, the Director raised the lack of evidence of deliberate indifference in her motion for summary judgment, Doc. 125 at 9, 12-13, and this court may affirm on any basis in the record, *see supra* p. 17. This court "need not scrutinize the district court's reasoning" in granting summary judgment, so it need not consider Fillmore's arguments as to this element of his claim.  *Stokes v. Ill. Dep't of Corrs.*, ___ F.4th ___, 2026 WL 2207644, at *3 (7th Cir. July 31, 2026) (cleaned up).

In sum, Fillmore's position in this case is that any prisoner who says that rear cuffing is painful must receive an alternative cuffing permit, or else he is entitled to a trial on damages claims against non-medical prison personnel — even though his claim is based on non-obvious internal bone and tissue conditions, it is undisputed that the non-medical prison personnel relied on medical professionals' judgment, and the prisoner has abandoned any contention that the medical professionals themselves acted with deliberate indifference.  No precedent supports that position.  Summary judgment should be affirmed.

## CONCLUSION

For these reasons, Defendant-Appellee Latoya Hughes asks this court to affirm the district court's judgment in her favor.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

/s/ Caleb Rush
**CALEB RUSH**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2274 (office)
(773) 590-6984 (cell)
Caleb.Rush@ilag.gov

August 14, 2026

Attorneys for Defendant-Appellee
Latoya Hughes

28

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word Version 2607 in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(B) in that the brief contains 7,121 words.

/s/ Caleb Rush
CALEB RUSH
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-2274 (office)
(773) 590-6984 (cell)
Caleb.Rush@ilag.gov

**CERTIFICATE OF FILING AND SERVICE**

I certify that on August 14, 2026, I electronically filed the foregoing Brief of Defendant-Appellee Latoya Hughes with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this appeal are CM/ECF users and will be served by the CM/ECF system:

> Patrick M. Creagh
> pcreagh@cassiday.com
>
> Julie A. Teuscher
> jteuscher@cassiday.com
>
> Samuel Weiss
> sam@rightsbehindbars.org

> /s/ Caleb Rush
> CALEB RUSH
> Assistant Attorney General
> 115 South LaSalle Street
> Chicago, Illinois 60603
> (312) 814-2274 (office)
> (773) 590-6984 (cell)
> Caleb.Rush@ilag.gov