**No. 25-2682**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

AARON FILLMORE

*Plaintiff-Appellant*,

v.

MELISSA WISE, ET AL.

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of Illinois
3:22-cv-2705
Gilbert C. Sison, Magistrate Judge

---

# APPELLANT'S REPLY BRIEF

---

Samuel Weiss
Lillian Novak
RIGHTS BEHIND BARS
1800 M Street NW, FNT 1
#33821
Washington, DC 20033
(202) 455-4399
sam@rightsbehindbars.org

**DISCLOSURE STATEMENT**

Appellate Court No: 25-2682
Short Caption: *Aaron Fillmore v. Melissa Wise, et al.*

1. The full name of every party that the attorney represents in the case:

   Aaron Fillmore

2. The names of all law firms whose partners or associates have appeared for the party in the case:

   Rights Behind Bars

3. If the party, amicus or intervenor is a corporation:
   a. Identify all its parent corporations, if any:

      Not applicable.

   b. list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      Not applicable.

4. Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases

   Not applicable.

5. Provide Debtor information required by FRAP 26.1(c) 1 & 2:

   Not applicable.

Dated: September 4, 2026

*/s/ Samuel Weiss*
Samuel Weiss
Rights Behind Bars
1800 M Street NW, Front 1
#33821
Washington, DC 20033

*Attorney for Appellant Aaron Fillmore*

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ........ i
TABLE OF CONTENTS ........ ii
TABLE OF AUTHORITIES ........ **Error! Bookmark not defined.**
ARGUMENT ........ 1
I. Defendant Erroneously Relies Entirely on Constitutional, not ADA, Doctrine........ 2
II. DOC is Liable for Medical Defendants' Deliberate Indifference to Fillmore's Federally Protected Disability Rights. ........ 8
III. DOC Is Not Due Summary Judgment on ADA Deliberate Indifference. .14
CONCLUSION ........ 18
CERTIFICATE OF SERVICE
CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arana v. Bd. of Regents of Univ. of Wisconsin Sys.*, 182 F.4th 670 (7th Cir. 2026) . 2

*Armstrong v. Schwarzenegger*, 622 F.3d 1058 (9th Cir. 2010) ........................ 10, 13

*Ashby v. Warrick Cnty. Sch. Corp.*, 908 F.3d 225 (7th Cir. 2018)...................... 9, 13

*Barnes v. Gorman*, 536 U.S. 181 (2002)................................................................ 12

*Bartenwerfer v. Buckley*, 598 U.S. 69 (2023) ........................................................ 11

*Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005) .......................................................... 2

*Carter v. City of Chicago*, 520 F. Supp. 3d 1024 (N.D. Ill. 2021)............................ 9

*Castle v. Eurofresh, Inc.*, 731 F.3d 901 (9th Cir. 2013)......................................... 10

*Dale v. Lappin*, 376 F.3d 652 (7th Cir. 2004) ........................................................ 15

*Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87 (3d Cir. 2011) .... 11

*Eagan v. Dempsey*, 987 F.3d 667 (7th Cir. 2021)................................................ 2, 4

*Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005) ........................................................ 4

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ................................ 10, 12

*Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667 (7th Cir. 2012) ................................. 1

*Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006)................................................ 4

*Kiman v. New Hampshire Dept. of Corrs.*, 451 F.3d 274 (1st Cir. 2006)................. 7

*King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012)........................................................ 3

*Lacy v. Cook Cnty.*, 897 F.3d 847 (7th Cir. 2018) ......................................... 2, 5, 14

*Leiser v. Kloth*, 933 F.3d 696 (7th Cir. 2019) .......................................................... 4

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)................................. 13

*Marietta Mem'l Hosp. Emp. Health Benefit Plan v. DaVita Inc.*, 596 U.S. 880 (2022) ........ 11

*Marks v. Colorado Dep't of Corr.*, 976 F.3d 1087 (10th Cir. 2020) ........ 10, 13

*Martin v. Emmanuel*, No. 19 CV 1708, 2019 WL 4034506 (N.D. Ill. Aug. 27, 2019) ........ 9

*McDaniel v. Syed*, 115 F.4th 805 (7th Cir. 2024) ........ 6

*McGee v. Adams*, 721 F.3d 474 (7th Cir. 2013) ........ 4, 7

*McGee v. Parsano*, 55 F.4th 563 (7th Cir. 2022) ........ 4

*McKissick v. Cnty. of York*, No. 09-CV-1840, 2011 WL 5117621 (M.D. Pa. Oct. 25, 2011) ........ 5

*Montanez v. Price*, 154 F.4th 127 (3d Cir. 2025) ........ 10, 14

*Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) ........ 14

*Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899 (N.D. Ill. 2009) ........ 7

*Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185 (10th Cir. 2007) .. 7

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248 (3d Cir. 2013) ........ 3

*Sanville v. McCaughtry*, 266 F.3d 724 (7th Cir. 2001) ........ 1

*Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634 (7th Cir. 2015) . 1

*Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757 (7th Cir. 2021) ........ 4, 7

*Zemlick v. Burkhart*, 164 F.4th 1004 (7th Cir. 2026) ........ 4

**Statutes**

Americans with Disabilities Act of 1990, Pub. L. 101-336 (July 26, 1990) ........ 14

29 U.S.C. § 794 ........ 10

29 U.S.C. § 794(a) ........ 5, 13

29 U.S.C. § 794a ........ 12

42 U.S.C. § 12132 ........................................................ 5, 10, 13

42 U.S.C. § 12133 ........................................................ 11

**Regulations**

28 C.F.R. § 35.130(b)(1) ........................................................ 12, 13

28 C.F.R. Part 35, App. A ........................................................ 13

28 C.F.R. § 41.51(b)(1) ........................................................ 13

Order No. 1512-91, 56 Fed. Reg. 35,716 (July 26, 1991) ........................................................ 14

**Other Authorities**

E. Allan Farnsworth, III *Farnsworth on Contracts* § 11.10 (1998) ........................................................ 12

Restatement (Second) of Contracts § 318 ........................................................ 12

## ARGUMENT

In her Answering Brief, Defendant Hughes[1] does not dispute that the district court erred in its Americans with Disabilities Act (ADA)[2] analysis. Instead, Defendant makes a single, unrelated argument: that this Court should affirm summary judgment on the separate ground that the Department of Corrections (DOC) is insulated from ADA liability due to the actions of their medical contractors. No court has recognized such an exception as a matter of law in the ADA context. This makes sense. Congress passed Title II of the ADA to regulate public entities: states and their agencies. Liability under the ADA lives with public entities and cannot be delegated or abdicated due to the conduct of non-regulated parties, including medical contractors. Further, in this case, both the medical

[1] Medical Defendants Wise and Myers submitted a separate brief in this appeal, *see* ECF 41. As Fillmore appeals only his ADA claim, and not the district court's ruling on his Eighth Amendment medical deliberate indifference claims (Op. Br. at 1), only Defendant Hughes, sued in her official capacity as Acting Director of the Illinois Department of Corrections, remains as a defendant on the ADA claim. Hughes was sued in her official capacity, and as such she "stands in for the agency [she] manages," namely, the Illinois Department of Corrections (DOC). *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 640 (7th Cir. 2015); *see also Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) ("Official capacity suits are actions against the government entity of which the official is a part.").

[2] Fillmore brings claims under both Title II of the ADA and Section 504 of the Rehabilitation Act (RA). Because "[t]he relief available … under" the ADA and Rehabilitation Act "is coextensive" and "the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds," this brief will use ADA as shorthand to refer to both statutes. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012).

contractors and DOC employees were aware that Fillmore's rights under the ADA were substantially likely to be violated yet took no action to accommodate him. This is sufficient to survive summary judgment on deliberate indifference.

## I. Defendant Erroneously Relies Entirely on Constitutional, not ADA, Doctrine.

Defendant's Answering Brief is premised on a fundamental misunderstanding of the ADA's deliberate indifference requirement. Defendant repeatedly conflates the deliberate indifference inquiries under the ADA and constitutional medical care claims. Ans. Br. at 17–24. To obtain compensatory damages, ADA plaintiffs must show that defendants discriminated intentionally. *Lacy v. Cook Cnty.*, 897 F.3d 847, 862 (7th Cir. 2018). A plaintiff can show intentional discrimination by proving deliberate indifference to their rights as a person with a disability, that is, that "the defendant knew that harm to a federally protected right was substantially likely and ... failed to act on that likelihood." *Id.* at 862–63. Though this standard shares a *mens rea* requirement with the standard for constitutional medical care claims, the two tests are far from coextensive.

"Deliberate indifference" describes a mental state required across a range of constitutional and statutory claims. *See*, *e.g.*, *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (requiring that plaintiff show "deliberate indifference to serious medical needs" in Eighth Amendment medical care case); *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (requiring that plaintiff show "deliberate indifference" to a

"substantial risk" of harm in Fourteenth Amendment failure to protect case); *Arana v. Bd. of Regents of Univ. of Wisconsin Sys.*, 182 F.4th 670, 684 (7th Cir. 2026) (requiring that plaintiff show "deliberate indifference to known acts of harassment" in Title IX case). Each of these standards contains a distinct substantive component to which the deliberate indifference *mens rea* must be applied.

Defendant glosses over this critical distinction when she states that the ADA's deliberate indifference standard is "consistent with" the standard under § 1983. Defendant cites *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, a Third Circuit opinion that correctly explains that deliberate indifference has the same definition whether in the context of the Eighth Amendment, the ADA, or Title IX: knowing disregard. 729 F.3d 248, 263 n.23 (3d Cir. 2013). But a knowing disregard *of what* depends on the substance of the law, as the ADA is no more a carbon copy of the Eighth Amendment than Title IX is.

Defendant's misunderstanding colors her entire argument. Every case that she cites to support her position that deference to a medical provider's reasoned judgment[3] absolves DOC of ADA damages liability concerns the Eighth or

[3] Defendant's argument would fail even if her construction of the law was correct because there is a genuine dispute of fact as to whether Myers and Wise's medical judgment was "reasoned." *See* (R. 75) (Wise's own sworn declaration, explaining that she removed Fillmore's accommodation because "there was no obvious reason for a waist chain permit" and "Plaintiff did not qualify for a waist chain permit as he did not meet the criteria," but failing to provide any reasoning underpinning these conclusions).

Fourteenth Amendment, not the ADA. *See* Ans. Br. at 19–24 (citing *King v. Kramer*, 680 F.3d 1013, 1013–18 (7th Cir. 2012) (Fourteenth Amendment medical care claim brought by estate of detainee who died after suffering a seizure in jail); *Eagan*, 987 F.3d at 667–77, 694 (Eighth Amendment medical care and failure to protect claims brought by prisoner with severe mental health disorders); *Leiser v. Kloth*, 933 F.3d 696, 698, 705 (7th Cir. 2019) (Eighth Amendment claim brought by detainee with PTSD regarding harassment by prison guard); *McGee v. Adams*, 721 F.3d 474, 477–78, 483 (7th Cir. 2013) (Fourteenth Amendment medical care claim regarding use of leg irons); *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760, 767–68 (7th Cir. 2021) (Eighth Amendment medical care claim regarding use of restraint); *Johnson v. Doughty*, 433 F.3d 1001, 1009 (7th Cir. 2006) (Eighth Amendment medical care claim regarding hernia treatment); *Greeno v. Daley*, 414 F.3d 645, 649–52, 655–56 (7th Cir. 2005) (Eighth Amendment medical care claim regarding esophageal ulcer); *Zemlick v. Burkhart*, 164 F.4th 1004, 1008-09, 1012 (7th Cir. 2026) (Fourteenth Amendment medical care claim regarding post-operative infection); *McGee v. Parsano*, 55 F.4th 563, 573 (7th Cir. 2022) (Fourteenth Amendment medical care claim regarding death due to lack of diabetes treatment)).

The logic that animates this constitutional doctrine does not carry over to the ADA. Eighth Amendment medical care claims center around whether defendants deliberately ignored a "serious medical need." *Eagan,* 987 F.3d at 688. ADA claims,

on the other hand, ask whether defendants ignored a "federally protected right," namely lack of access to prison "services, programs or activities." *Lacy*, 897 F.3d at 853, 863. The former requires specialized medical knowledge. The latter does not. Instead, it requires knowledge the mandates of federal disability law and what constitutes a service, program, or activity. This knowledge is not inherently medical. To the contrary, the security staff that administer daily access to prison programs are often the most likely to have this knowledge. DOC's own policy that governs cuffing permits recognizes the involvement of security staff in these determinations: "Prior to any movement … [t]he offender shall be handcuffed behind the back in his or her cell, unless a medical condition or other reason exists to require front cuffing, *as approved by the Major or above*." (R. 51) (emphasis added).

Further, Congress made clear in the ADA's (and RA's) text that it sought to burden public entities (and recipients of federal funds), not medical doctors, with the duty to accommodate. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a). There is no statutory basis for reading an atextual delegation framework into the ADA that would absolve the entities Congress sought to regulate of their statutory duties. *See McKissick v. Cnty. of York*, No. 09-CV-1840, 2011 WL 5117621, at *8 (M.D. Pa. Oct. 25, 2011) (rejecting prison's argument that it was not liable under Title II of the ADA because "decisions regarding [plaintiff]'s medical care … were made exclusively by PrimeCare Medical and its employees" because "the Prison Board

has not pointed to any statute or regulation that would permit the prison to delegate to a third-party contractor the board's obligations under Title II with respect to ensuring that inmates are not excluded from any program or benefit on the basis of their disabilities.")

This Court recognized that the decisions of medical professionals do not always carry the day in ADA cases in *McDaniel v. Syed*, 115 F.4th 805, 828–29 (7th Cir. 2024). In *McDaniel,* the Court held that because the plaintiff's unaccommodated disability impeded movement about the prison to access services, evidence could support a deliberate indifference finding despite a doctor's termination of his accommodation. *Id.* The medical provider's removal of the plaintiff's accommodation in *McDaniel* was more "reasoned" than Wise's removal of Fillmore's cuffing permit yet still did not insulate security staff from ADA liability. *Id.* at 823, 828–29. In *McDaniel*, a doctor rescinded a "low tier, no stairs restriction" on the advice of the plaintiff's physical therapist, who believed additional exercise would prevent muscle atrophy. *McDaniel,* 115 F.4th at 823. This led the plaintiff to habitually miss meals and pill line. *Id.* at 824. Even though the doctor relied on the physical therapist's professional judgment, and prison guards in turn relied on the doctor's decision, this Court still found that prison staff was deliberately indifferent to the plaintiff's rights under the ADA. The analysis turned, as it should, on what

prison staff knew about the plaintiff's meal and medication access, not on what doctors recommended. *Id.* at 829.

Defendant gives special notice to two of her cited constitutional cases, *Stewart* and *McGee v. Adams*, because they consider requested modifications to prison policies factually similar to the cuffing permit Fillmore seeks. But these litigants chose to bring their cases under the Eighth and Fourteenth Amendments, not the ADA. *Stewart,* 14 F.4th at 760; *McGee*, 721 F.3d at 477–78. These plaintiffs never argued that they lacked access to a program, service or activity. That makes all the difference when assessing whether summary judgment is due as a matter of law.

Finally, Defendant's argument that non-medical staff were not deliberately indifferent to Fillmore because his need for accommodation was not "obvious" also inappropriately borrows from Eighth Amendment caselaw. Defendant cites *Stewart* to support her argument that because "[n]on-medical prison staff" cannot perform a "complicated assessment" of a medical issue, they can only be deliberately indifferent when the need for accommodation is obvious. Ans. Br. at 21 (citing *Stewart*, 14 F.4th at 768). In the ADA context, obviousness of disability is relevant to defendants' knowledge only insofar as the plaintiff never expressly raised his access issues. *Phipps v. Sheriff of Cook Cnty.*, 681 F. Supp. 2d 899, 926 (N.D. Ill. 2009) ("[W]here 'a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim.") (citing

*Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1197 (10th Cir. 2007)); *Kiman v. New Hampshire Dept. of Corrs.*, 451 F.3d 274, 283 (1st Cir. 2006)). Because Fillmore put Wise, Myers, and many DOC officials on notice of his need for an accommodation, the parties' dispute over its obviousness is immaterial as a matter of law (and genuinely disputed as a matter of fact, *see* Op. Br. at 2; Ans. Br. at 21).

## II. DOC is Liable for Medical Defendants' Deliberate Indifference to Fillmore's Federally Protected Disability Rights.

Far from insulating DOC, the conduct of medical providers Wise and Myers also evinces deliberate indifference to Fillmore's rights under the ADA. Defendant takes for granted that Wise and Myers were not deliberately indifferent under the ADA. She asserts that "here, it would be particularly inappropriate to allow damages claims to proceed against the State after prison staff relied on medical professionals' judgment, as Fillmore does not even assert on appeal that the medical professionals (Dr. Myers and Wise) themselves were deliberately indifferent when they denied his medical cuffing permit. See AT Br. 1, 6-13." But Fillmore never conceded this in the ADA context. *See* Op. Br. at 3–4 (containing facts about Wise and Myers' interactions surrounding Fillmore's cuffing permit). Fillmore did not challenge the district court's deliberate indifference findings as to these providers' liability under the Eighth Amendment in his opening brief, but that is an entirely distinct inquiry from their deliberate indifference under the ADA. *See*, *supra*, Section I. As discussed

*infra*, Section III, both Wise and Myers knew that Fillmore could not access prison programs and services yet failed to take any action to accommodate his disabilities.

Myers and Wise are not DOC employees but rather work for a private medical contractor. (R. 73) ("I am currently employed by Wexford Health Sources, Inc."); (R. 96) ("Defendant Myers has been employed by Wexford Health Sources, Inc … since June 13, 2018"). Their status as contract, rather than DOC, employees, is immaterial. This Court has held that "it is clear that a governmental entity cannot avoid its obligations under the statute by ceding its governmental functions to private entities." *Ashby v. Warrick Cnty. Sch. Corp.*, 908 F.3d 225, 232 (7th Cir. 2018). In *Ashby*, this Court considered "complicated relationships between public and private actors," wherein a private museum hosted a concert in which a public school's arts program performed. *Id.* This Court held that when a public and private entity are involved in a "true joint endeavor," or "is the result of a close relationship," the public entity's obligations under Title II extend to the entire venture. *Id.* at 232–233; *see also Martin v. Emmanuel,* No. 19 CV 1708, 2019 WL 4034506, at *4 (N.D. Ill. Aug. 27, 2019) (holding that City of Chicago and operator of private homeless shelter were engaged in a "true joint venture," even though the private shelter did not receive city funding, because the city referred people to the shelter through public channels); *Carter v. City of Chicago*, 520 F. Supp. 3d 1024, 1031 (N.D. Ill. 2021) (same). Under this logic, DOC and Wexford Health Sources certainly have a

"close relationship" in operating the "joint venture" of prison services: they have a contractual relationship and DOC funnels state prisoners directly to Wexford, and only Wexford, for prison medical care.

Other courts have held more specifically that that states that contract away their programs and services remain liable under the ADA and RA for the discriminatory acts of their contractors. *See Montanez v. Price*, 154 F.4th 127, 151 (3d Cir. 2025); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1065–67 (9th Cir. 2010); *Castle v. Eurofresh, Inc.,* 731 F.3d 901, 910 (9th Cir. 2013); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 284–87 (2d Cir. 2003); *Marks v. Colorado Dep't of Corr.*, 976 F.3d 1087, 1097 (10th Cir. 2020). As these Courts universally have held, these statutes' text, their context, and their implementing regulations all compel the conclusion that states remain liable under the ADA for the actions of their contractors.

First, the text of the ADA and RA indicate that Congress intended that public entities remain liable for the disability discrimination of their contractors.[4] This text contains no plain language exception for contractors. *Montanez*, 154 F.4th at 150.

[4] The ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity..." 42 U.S.C. § 12132. The RA similarly reads "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

Three canons of statutory interpretation reinforce that Congress sought to create broad liability for regulated entities under these acts. *Id.* at 150–51. Congress's choice to use passive voice and "pull[ ] the actor off the stage," reflects Congress's "agnosticism" as to who does the excluding or denial of benefits—be they government employees or government contractors. *Id*. at 150 (citing *Bartenwerfer v. Buckley*, 598 U.S. 69, 75–76 (2023)). Congress's choice to name the actor in the second clause of Title II "demonstrates that 'Congress knew how to write ... a law' that cabined liability in the way the Commonwealth proposes and deliberately 'did not do so'" in Title II of the ADA's nondiscrimination mandate. *Id.* (citing *Marietta Mem'l Hosp. Emp. Health Benefit Plan v. DaVita Inc*., 596 U.S. 880, 887 (2022). And, as "'a remedial statute, meant to bring an end to discrimination against individuals with disabilities in all aspects of American life,' the ADA 'must be construed with all the liberality necessary to achieve [its] purpose[ ].'" *Id.* (citing *Disabled in Action of Pa. v. Se. Pa. Transp. Auth*., 635 F.3d 87, 94 (3d Cir. 2011)).

Second, the statutory context of both the ADA and the RA confirms that regulated parties under these acts assume a nondelegable duty to disabled persons accessing their programs. Both Title II of the ADA and the RA contain little text concerning the manner and scope of judicial enforcement. Title II incorporates the remedial scheme from the RA. 42 U.S.C. § 12133. The RA, in turn, incorporates the judicially implied private right of action under Title VI of the Civil Rights Act of

1964. 29 U.S.C. § 794a. Because of this limited statutory text, courts have looked to underlying legal principles to discern intent.

Because Congress passed the RA pursuant to its Spending Clause power, and Title II of the ADA directly incorporates the RA's judicial enforcement mechanism, the scope of both acts is circumscribed by principles of contract law. *Barnes v. Gorman,* 536 U.S. 181, 184–87 (2002). Delegation alone does not rid the state of its duty to perform the promise of nondiscrimination it assumes via these acts. *See* Restatement (Second) of Contracts § 318(3) (explaining that in most circumstances, "neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated discharges any duty or liability of the delegating obligor."); *see also Henrietta D*., 331 F.3d at 286 ("An 'obligor'—that is, one who promises performance in exchange for consideration—'cannot rid itself of a duty merely by making an effective delegation.'") (quoting E. Allan Farnsworth, III Farnsworth on Contracts § 11.10 p. 126 (1998)). Instead, delegation releases the original obligor of its promise "only if the contract so provides or if the obligee makes a binding manifestation of assent, forming a novation." Restatement of Contracts, Second § 318, cmt d. DOC puts forth no evidence that its contract with Wexford does as much.

Third, DOJ regulations plainly state that public entities are liable for their contractors' acts of disability discrimination. See 28 C.F.R. § 35.130(b)(1) (stating

that a public entity may not discriminate "directly or through contractual, licensing, or other arrangements") (emphasis added); 28 C.F.R § 41.51(b)(1) (same, for recipients of federal financial assistance under the Rehabilitation Act); 28 C.F.R. Part 35 App. A ("If a prison is occupied by State prisoners and is inaccessible, the State is responsible under title II of the ADA"); *see also Ashby*, 908 F.3d at 232 (citing 28 C.F.R. § 35.130(b)(1)).

These regulations implement two propositions that are clear from the text of Title II of the ADA and the RA, and that in no way exceed the scope of these statutes. First, the statutory text directly imposes liability for disability discrimination on state actors and recipients of federal funds. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Second, neither statute contemplates any method through which covered entities may rid themselves of liability by entering third party contracts. *Id.* The Ninth Circuit considered the above regulations in *Armstrong v. Schwarzenegger* and held that they reflect the "fairest reading of the statute." 622 F.3d at 1067; *see also Marks,* 976 F.3d at 1097 (considering regulations and concluding that the state "cannot avoid statutory liability solely because they were not directly involved" in its contractors' alleged disability discrimination.)[5]

[5] Even after *Loper Bright Enterprises v. Raimondo*, the agency interpretation advanced in these regulations remains highly persuasive, in part because these regulations were promulgated within a year of the ADA's passage. 603 U.S. 369–70, 386 (2024) (executive regulations interpreting ambiguous statutes are "entitled to very great respect," particularly when these regulations are "issued roughly

Thus, every Circuit to have considered whether regulated entities can delegate their duties under the ADA and RA has concluded, via a range of statutory interpretation techniques, that state agencies like DOC cannot delegate away their liability. To conclude otherwise would render the ADA and RA a "dead letter within state prisons—an outcome antithetical to Congress's 'unmistakabl[e]' intent to 'include[ ] State prisons and prisoners within' the statutes' coverage." *Montanez*, 154 F.4th at 151 (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998)).

## III. DOC Is Not Due Summary Judgment on ADA Deliberate Indifference.

Considered under the applicable ADA caselaw of this Court, Fillmore has presented sufficient evidence to show a genuine dispute of material fact as to whether DOC was deliberately indifferent to his rights under the ADA. To reiterate, Fillmore must show that "the defendant knew that harm to a federally protected right was substantially likely and ... failed to act on that likelihood." *Lacy,* 897 F.3d 862–63. To make this showing, he proffers evidence of the actions of senior DOC officials, medical providers (namely Wise and Myers), and DOC unit staff.

First, Fillmore proffers evidence showing that he alerted prison officials, including the prison's ADA coordinator, the Director of DOC, and the statewide

contemporaneously with enactment of the statute."); *compare* Order No. 1512-91, 56 Fed. Reg. 35,716 (July 26, 1991) *with* Americans with Disabilities Act of 1990, Pub. L. 101-336 (July 26, 1990).

ADA coordinator, that he was unable to access prison programs due to the excruciating pain he experienced during transport.[6] (R. 46) (copy of grievance sent to ADA Coordinator at the prison, explaining "I need my waist chain permit renewed to attend yard, shower, etc." due to a "chronic and degenerative" condition); (R. 47–49) (copy of letter sent to DOC Director and ADA Coordinator in Springfield, Illinois, explaining that being cuffed behind his back causes "tormenting discomfort," that he needs to be cuffed in front or by waist chain, and that he is unable to attend "yard, shower, programs, porter job" because of the lack of accommodation).

Second, Wise and Myers were also on notice of Fillmore's access issues. Fillmore directly asked both Wise and Myers for a cuffing permit. (R. 24, 28). Both providers were aware that the facility could provide this permit to alter the way prisoners were cuffed for secure transport. (R. 74) (Wise's testimony explaining that she was familiar with the accommodation); Doc. 125-1 at 16 (Fillmore's testimony that Myers referenced a DOC policy concerning cuffing permits). Further, Fillmore's grievance detailing the programs he could not access and requesting his permit was "referred to [his] onsite provider." (R. 46); *see also* Doc. 125-1 at 27 (Fillmore's testimony that Wise spoke with him about his grievances).

---

[6] Fillmore cites to his Complaint and summary judgment briefing as competent summary judgment evidence as both are verified. (R. 35, 61). *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

Third, line staff in Fillmore's unit were aware that he was frequently unable to be transported to prison programs and services due to the wrist pain associated with cuffing. (R. 55–56) (listing all the dates Fillmore missed prison programs or services because he could not be appropriately cuffed); Doc. 125-1 at 18 (Fillmore's testimony that officers in the Administrative Detention Unit knew him and were aware of his need for front cuffs and waist chains). His need for alternative cuffing is so obvious to the officers that encounter him daily that, before DOC required cuffing permits, line staff cuffed him in front or at the waist as a matter of course. Doc. 125-1 at 29.

Despite this knowledge, all of these actors failed to act to restore Fillmore's access to recreation, showers, the law library kiosk, his job as a porter, and other programs, effectively leaving him sitting in a solitary confinement cell all day.

Many did nothing at all. There is no evidence that the Director or Department-wide ADA Coordinator ever responded to or acknowledged Fillmore's letter. Some of his grievances were left unanswered, or even thrown away, by prison staff. Doc. 125-1 at 14. Many line officers cuffed him painfully or refused to transport him at all. (R. 55–56) (stating all the programming that Fillmore missed); *see also, e.g.,* Doc. 125-1 at 18 (stating that a specific officer, Lt. Piper, denied Fillmore yard because he did not have a permit).

Wise terminated an accommodation that Fillmore had received from other medical professionals over the course of four years because, per her own testimony, "there was no *obvious* reason for it." (R. 36–43, 75) (emphasis added). But Fillmore's condition was "chronic and degenerative," as contemporaneously documented by another provider, and Wise never contended that she removed the permit because his condition had changed. (R. 44). When Fillmore tried to follow up with her, she laughed. (R. 34).

The ADA Coordinator at Fillmore's prison responded to his cuffing permit grievance with "medical concern addressed with onsite provider" and appears to have taken no further action. (R. 46). But when Fillmore returned to medical and met with Myers, the doctor told him that the reason for the permit denial was a DOC policy, set by security staff, not a medical decision. *See* Doc. 125-1 at 16, 18 (Fillmore's testimony that Myers showed him a policy on DOC letterhead and told him per the policy "there would be no more front cuffs and waist chain permit[s] no matter disability or ADA," and that Myers told him the reason for the denial of his permit was the policy); Doc. 103-1 at 4 (Myers' testimony stating that he determined waist chain permit eligibility pursuant to "IDOC's criteria," not his own medical judgment). DOC staff and medical Defendants cannot escape liability by pointing at each other as Fillmore was excluded from prison programs and services for months.

The actions and omissions of all these actors are imputed to DOC, which is liable under the ADA. Because the evidence, construed in the light most favorable to Fillmore, shows that they each acted with deliberate indifference to Fillmore's isolation and pain over the course of many months, Fillmore's ADA claim survives summary judgment.

## CONCLUSION

This Court should reverse the district court's judgment and remand for further proceedings.

Date: September 4, 2026.

*/s/ Samuel Weiss*
Samuel Weiss
Lillian Novak
RIGHTS BEHIND BARS
1800 M Street NW, Front 1
#33821
Washington, DC 20033
(202) 455-4399
sam@rightsbehindbars.org

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: September 4, 2026

*/s/ Samuel Weiss*
Samuel Weiss

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7), I certify that:

The undersigned counsel of record for the Plaintiff-Appellant, Aaron Fillmore, furnishes the following in compliance of Fed. R. App. P. 32(a)(7) because this brief contains 4,466 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: September 4, 2026

*/s/ Samuel Weiss*
Samuel Weiss